J. B. BARTHOLOMEW v. THE FIRST NATIONAL BANK
OF SALINA, KANSAS, *et al.*

No. 9173.

1. EQUITABLE ASSIGNMENT—*rule of, not applied to aid volunteer
nor to work injustice.* The rule of equitable assignment is never
applied in aid of a mere volunteer, nor where it will operate as an
injustice to the creditor.

2. SUBROGATION—*surety not entitled to, till creditor's debt fully
paid.* Ordinarily the creditor is entitled to full satisfaction of
the debt before right of subrogation may be invoked; the surety
may not meddle with any of his rights and securities so long as
any portion of the debt remains unsatisfied.

3. ———— *judgment denying, affirmed on the facts.* The evi-
dence examined, and *held* to be sufficient to sustain the findings
and judgment of the trial court.

*Error from Saline District Court.*
*Hon. R. F. Thompson, Judge.*

AFFIRMED.                    OPINION FILED JANUARY 8, 1897.

THIS was an action by the New England Loan &
Trust Company to foreclose a mortgage given by Aaron
Zeiner and wife on a tract of land in Saline County to
secure the payment of a debt of $7,000. The same
parties had executed two mortgages upon the same
land to the First National Bank of Salina, Kansas; one
to secure the payment of two promissory notes, one
for $4,008.40, due December 4, 1889, and one for
$2,337.94, due December 1, 1891, and another mort-
gage to secure a note for $258.10, due December 1,
1891. The mortgage securing the notes of the First
National Bank of Salina was taken subject to that of
the New England Loan & Trust Company; and the
First National Bank of Salina was a party in the action
and asked for the foreclosure of its mortgage. John
Norton, who had purchased an equity in the Zeiner
land, and J. B. Bartholomew, who acted for him, took

up the note for $4,008.40. They were made parties
in the action, and asked to be subrogated to the rights
of the First National Bank of Salina; and that the
claim should be declared a second lien on the land,
subject only to that of the New England Loan & Trust
Company. The Zeiners did not defend and the only
controversy was between the Bank and Bartholomew
and Norton.

The cause was tried by the Court without a jury,
and the following findings of fact and of law were
made :

### "FINDINGS OF FACT.

" 1. That for about five years last past the said J.
B. Bartholomew has done business at Topeka, Kansas,
under the name of Bartholomew & Co.

" 2. That during the early part of the year 1889
defendant John Norton, through his agent, said
Bartholomew, purchased the equity of redemption in
the lands described in the answer and cross-petition
of said Bartholomew herein, and that since said pur-
chase said Bartholomew has had charge of and looked
after said lands for said Norton.

" 3. That during the month of April, 1889, some
correspondence was had between said Bartholomew
and said bank, in which the latter made some state-
ment to the former as to the incumbrances on said
lands, and said Bartholomew requested the bank to
send to him, ' Zeiner payments ' and ' interest notices '
and they should receive prompt payment.

" 4. That on the 3rd day of December, 1889, said
Bartholomew wrote and sent to said bank a letter as
follows : —

"DECEMBER 3, 1889.

" *First National Bank, Salina, Kansas*:

DEAR SIR — Your notice of the note of Mr. Zeiner coming due early
in this month will be inconvenient to meet at the present time. It
will be necessary for you to carry that a short time.

Respectfully yours,     BARTHOLOMEW & Co."

" 5. That after the receipt of said letter, dated
Dec. 3d, 1889, and prior to 30th day of that month,

a number of letters passed between said Bartholomew and said bank concerning the payment of said promissory note for $4,008.40 to be made by the former to the latter, and in said letters propositions were submitted by each party to the other for such payment, in installments at different times. On the 30th day of December, 1889, as the result of said correspondence T. F. Garver, who was duly authorized by the bank to act for it, met said Bartholomew at Topeka, Kan., where said Bartholomew made and delivered to said Garver for the bank a written guaranty, of which the following is a copy, to wit:

"In consideration of an extension of the time for payment of the note hereto attached, made by Aaron Zeiner and Lucinda Zeiner for $4,008.40, as hereinafter stated, we guarantee the payment of the balance due on the same as follows: One thousand dollars in sixty days, one thousand dollars in ninety days, one thousand dollars in four months, one thousand dollars in six months; with interest on said sums at the rate of 8 per cent. per annum from this 30th day of December, 1889. Said sums to be in full for said note, on condition of consent of makers of note to the extension.

"TOPEKA, KAN., December 30, 1889. BARTHOLOMEW & Co."

"6. That at the time said guaranty was made said Bartholomew paid to Mr. Garver, for the bank on said note, $313.87, which was then endorsed by said Garver on said note, leaving still due on said note, as agreed by said parties, the sum of four thousand dollars.

"7. That soon after said guaranty was made the makers of the note for $4,008.40, at the request of said bank agreed to the extension of its payment as provided for by said guaranty.

"8. The first one thousand dollars named in said guaranty was paid about the time it became due, and the second one thousand dollars was paid on the 5th day of May, 1890.

"9. The third and fourth installments mentioned in said guaranty remaining unpaid, certain correspondence was had during the time from the 26th of June to July 17th, 1890, between the bank and said Bartholomew, in which it was agreed that in place of said guaranty said Bartholomew should execute and deliver to said bank his two notes for $1,000 each,

bearing 10 per cent. interest, to be dated July 1st, 1890, one payable 90 days after date and the other payable 120 days after date; and that said notes should take the place of said guaranty; and that said note for $4,008.40 should be held by the bank as collateral security for their payment. In pursuance of said agreement said Bartholomew, on or about the 15th day of July, 1890, made and delivered to said bank his two notes for $1,000 each, as agreed upon, and said bank then surrendered to him his said guaranty.

"10. That the note for $1,000 made by Bartholomew to said bank, dated July 1, 1890, payable 90 days' after date, was paid in full to said bank by the maker thereof, on or about the 2d day of October, 1890; the other note for $1,000 made by said Bartholomew to said bank was not paid at its maturity, but was renewed from time to time and was not fully paid until the 21st day of November, 1891.

"11. That a copy of said note for $4,008.40, with certain endorsements thereon, is attached to the answer and cross-petition of said Bartholomew herein, and the amounts of money and interest payments, as shown by said endorsements, excepting the first, were paid by said Bartholomew to said bank under said guaranty and the two promissory notes for $1,000 each, hereinbefore described, and were endorsed on said note for $4,008.40 by said bank at the time they were made; but said Bartholomew did not know that said endorsements, excepting the first, had been made on said note until it had been surrendered to him.

"12. That there was no agreement or understanding between said bank and said Bartholomew that the former should sell, assign or transfer to the latter said note for $4,008.40, but said Bartholomew paid said note.

"13. That on or about the 1st day of December, 1891, said Bartholomew requested said bank to assign said note for $4,008.40 to him, but said bank refused to so assign it but did then deliver it to him."

"CONCLUSIONS OF LAW:

"1. That said Bartholomew by said payment extinguished said promissory note for $4,008.40.

"2. That said Bartholomew is not entitled to be subrogated to the rights of the payee of the said promissory note for $4,008.40 and the mortgage given to secure the same.

"3. That said Bartholomew is not entitled to recover in said action on said note for $4,008.40 against Aaron Zeiner and Lucinda Zeiner."

Bartholomew excepted to the findings of fact and of law and has brought the case here for review.

*Douthitt & Wolfe*, for plaintiff in error.

*Wilson & Wilson*, for defendant in error, The First National Bank of Salina, Kansas.

JOHNSTON, J.   The only contention here is between J. B. Bartholomew, who took up one of the Zeiner notes, and the First National Bank of Salina, Kansas, the payee of the note.   Bartholomew claims that he purchased the note and was entitled to be subrogated to the rights of the Bank and to have the mortgage securing the note foreclosed in his favor.   The Bank insists that there was no purchase or assignment of the note, and that only payment was contemplated by either party.   The claim that the testimony fails to support the findings of fact cannot be sustained, and this is the principal error assigned.   In the negotiations between Bartholomew and the Bank nothing was said indicating a purpose on his part to purchase the note, nor concerning its assignment to him. When arrangements were made for the taking up of the note by Bartholomew he paid $313.87, which was indorsed upon the note as any payment would have been.   This amount appears to have been indorsed

upon the note as a payment, in the presence of Bar-
tholomew, and no objection was then made nor any
claim that it should be treated as a purchase.   Ac-
cording to the testimony of Bartholomew he had no
interest in the land to protect, was under no obligation
to assume the burden of this debt, and had no agree-
ment with the debtors that he would assume or pay the
same.   The Bank appears to have proceeded upon the
theory that Norton, who held the equity in the Zeiner
land, was a member of the firm of Bartholomew & Co.,
and that therefore Bartholomew was interested in the
payment of the incumbrance against his land for the
protection of his own interests.   He claims, how-
ever, that he was only acting as the agent of Norton,
and had no interest in the equity which Norton
had purchased.   From the testimony it would seem
that the object of the Bank was to secure the
payment of a part of the mortgage debt so that
the security would be sufficient for the portion re-
maining unpaid.   The lien of the Bank was subse-
sequent to the $7,000 mortgage of the New England
Loan and Trust Company, and when the transaction
was had with Bartholomew it held another note
secured by the same mortgage amounting to nearly
$2,500, and still another note for $258.19, together
with accumulated interest, secured by another mort-
gage upon the same land.   Under the testimony and
findings we must assume that there was no assign-
ment, nor intention that Bartholomew should be sub-
stituted for the Bank when payment was made.   In
view of the large incumbrance which was prior to
that of the Bank, and of the fact that only a little
more than half of the secured debt to the Bank was
paid by Bartholomew, there is much plausibility in
the claim of the Bank that it was seeking to reduce

the indebtedness by payment so that the security would safely cover the unpaid portion of the debt. The Bank would have little to gain by the sale and assignment of the note if Bartholomew was to be substituted and given a lien as against the Bank for the unpaid portion of the mortgage debt, which at the trial amounted to considerably more than $3,000. The Bank was not required to assign the debt; and the rule of equitable assignment is never applied in aid of a mere volunteer, nor where it will operate inequitably upon the creditor. If Bartholomew was to be treated as a surety, he would not be entitled to subrogation, because only a portion of the mortgage debt has been paid. "The creditor is entitled to full satisfaction of the debt before the right of subrogation may be invoked; the surety may not meddle with any of his rights and securities so long as any portion of the debt remains unsatisfied." 24 Am. & Eng. Encyc. Law, 200, and cases cited.

In our view there is sufficient testimony to support the findings of the Court, and its judgment must be affirmed.

All the Justices concurring.