JOSEPH KNAFFL *v.* KNOXVILLE BANKING & TRUST
COMPANY.  *In re* BACON.

*(Knoxville.*  September Term, 1915.)

1.  SUBROGATION.  Payment of debt.  Sufficiency.

As a surety is not entitled to subrogation until the debt is paid
in full, a surety on a bond to secure a city in the deposit of
moneys in an insolvent banking institution is not entitled to sub-
rogation, though he has paid the bond, where the bank was
still largely indebted to the city, and the total amount of divi-
dends, together with the amount of the bond, would not dis-
charge the obligation; for in such case, if the surety were *pro*

*rata* subrogated to the bank's right to receive dividends, the
city would be injured.  (*Post, pp.* 657-659.)

Cases cited and approved:  Harlan v. Sweeny, 69 Tenn., 686;  Gil-
liam v. Esselman, 37 Tenn., 86.

Cases cited and distinguished:  Columbia Finance, etc., Co. v. Ky.
Un. R. Co., 60 Fed., 794;  New Jersey Midland R. Co. v. Worten-
dyke, 27 N. J. Eq., 658.

2.  SUBROGATION.  Contracts.  Construction.

Though a bond to secure a city in a deposit of money in a bank
declared that in case of default and payment of the claim the
surety should be subrogated to all rights of the city against
the bank to the amount of such payment, the surety only has
the usual rights of subrogation, and his payment, together with
dividends paid by the bank, not being sufficient to discharge the
obligations due from the bank, he is not entitled to subrogation
to the detriment of the city.  (*Post, pp.* 660-662.)

Case cited and distinguished:  Ex parte Rushforth, 10 Vesey, Jr.,
409.

FROM KNOX

Appeal from the Chancery Court of Knox County.—
WILL D. WRIGHT, Chancellor.

CHARLES T. CATES, JR., for appellant.

WRIGHT & JONES, D. C. WEBB and HUGH M. TATE, for
appellee.

MR. JUSTICE FANCHER delivered the opinion of the
Court.

The suit in which this petition is filed is a proceed-
ing by complainants on behalf of themselves and all
other creditors of the Knoxville Banking & Trust Com-
pany for the purpose of administering the affairs of
said corporation as an insolvent concern. This par-
ticular intervening petition was filed by Charles H.
Bacon to recover of the receiver of said Knoxville
Banking & Trust Company in round numbers $28,000,
being the amount, with interest, of a bond executed by
the said Charles H. Bacon and others, as sureties for
the Knoxville Banking & Trust Company, as principal,
to secure the city of Knoxville in the deposit of moneys
in said banking institution.

Petitioner avers that judgment was rendered
against him and all the other sureties on said bond,
which judgment was paid by him alone; the other sure-

ties being insolvent. This bond provided that the Knoxville Banking & Trust Company will "truly keep all sums of money deposited with it by the city of Knoxville, and shall pay over the same, and each and every part thereof, upon the written demand of the said city of Knoxville."

Petitioner avers, in effect, that he is entitled to recover of the receiver such *pro rata* as he may be entitled to on the $28,000 paid by him, upon the ground that he will be subrogated to all the rights of the city of Knoxville to the extent of the payment made by him to the city on this obligation.

The petition does not aver that this payment was in full of all sums of money so deposited. On the contrary, it is admitted in the petition that the city had on deposit more than the amount of the bond, and has received only a thirty per cent. dividend. The amount of the city's deposit is shown by the bill or petition of the said city of Knoxville filed in the general cause which was ordered to be sent up with the transcript to be $60,000, and in the briefs of counsel this sum is treated as the total amount of the deposit.

The receiver demurred to this intervening petition upon three grounds. The first ground of demurrer, we think, is conclusive of the case, to wit, that it was not averred that the entire indebtedness due the city of Knoxville from the Knoxville Banking & Trust Company has been paid, and, consequently the petitioner would not be entitled to subrogation or to any

other relief against the Knoxville Banking & Trust Company or its receiver. .It appears that, if the city should receive the full amount which will be finally paid in the receivership proceeding, it will not receive a sufficient amount to cover the entire indebtedness.

A surety is not entitled to subrogation until the debt is paid in full, the creditor in the meantime left in control of the debt, and all the remedies for collection. A *pro tanto* assignment or subrogation will not be allowed. The reason is that subrogation is a creature of equity and will never be allowed to the prejudice of the creditor. *Harlan* v. *Sweeny,* 1 Lea, 686; *Gilliam* v. *Esselman,* 5 Sneed, 86; 37 Cyc., 408.

"If the surety, upon making a partial payment, became entitled to subrogation *pro tanto,* and thereby became entitled to the position of an assignee of the property to the extent of such payment, it would operate to place such surety upon a footing of equality with the holders of the unpaid part of the debt, and, in case the property was insufficient to pay the remainder of the debt for which the guarantor was bound, the loss would logically fall, proportionately upon the creditor and upon the surety. Such a result would be grossly inequitable." *Columbia Finance, etc., Co.* v. *Ky. Un. R. Co.,* 60 Fed., 794, 9 C. C. A., 264.

In *New Jersey Midland R. Co.* v. *Wortendyke,* 27 N. J. Eq., 658, the New Jersey court said:

"The right of subrogation cannot be enforced until the whole debt is paid. And until the creditor be wholly satisfied there ought and can be no interference

with his rights or his securities which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim."

In the present case Bacon was not liable for the debt beyond the amount of his bond, but the obligation to pay the bond was conditioned that the bank should "well and truly keep all sums of money deposited by the city and pay over the same and each and every part thereof."

So that the bond was an obligation limited to $25,000, but conditioned that the bank should well and truly keep all sums of money and pay over the same and each and every part thereof. The full amount of the bond has been discharged by the surety, but the condition expressed has not been complied with. The bank has not well and truly kept all sums of money depos- ited with it and paid over each and every part thereof. The principal liability still exists in part, though the surety has paid the penalty of the bond. This, how- ever, did not satisfy the creditors' demands against the principal, which was to determine the liability on the bond. The amount of the liability is satisfied so far as Bacon is concerned, but the cause and deter- mination of that liability is not satisfied in full.

The particular prejudice to the city by permitting a *pro tanto* assignment in this case to the extent of the payment by the surety lies in the fact that the *pro rata* which the city would receive from the principal debtor would become less.

But it is said that this case does not involve the doctrine of equitable subrogation alone. The bond provided for what is termed conventional subrogation in the following words:

"In case of default hereunder and the payment of a claim under this bond, the said surety shall be forthwith subrogated to all the rights of the said city of Knoxville against the said bank, its receiver, or any person or corporation as respects such funds to the amount of such payment; and the city of Knoxville, Tennessee, covenants to execute all papers required and to cooperate with the said surety in order to secure for the said surety such rights."

This provision must be considered in connection with the undertaking, of which it is a part, to secure the city against all loss. It does not provide for subrogation *pro tanto* upon payment of a part of the obligee's claim. The bond was not to pay a particular $25,000, but was an obligation to pay any deficit left unpaid by the principal, to the extent of $25,000.

Had it chosen to do so, the city might have deferred action on the bond until it had received the last dollar from the receiver, and then it could sue the surety on the bond and recover the full amount of the penalty, not exceeding the total debt unpaid. But the city did not have to exhaust the assets of the principal before a recovery from the surety. The fact that it recovered judgment and received payment from the surety before exhausting the principal does not alter the case.

We are of opinion that this contractual subrogation is nothing more than the usual equitable right which the surety would have without stipulation. Before the court would permit a subrogation in favor of a surety that would be to the detriment of the obligee in the bond, the contract should be so certain as to admit of no doubt on that question. In the present case the main object of the bond was to secure and save harmless the city of Knoxville on all deposits it might make in the Knoxville Banking & Trust Company. We see no provision in the contract for a subrogation inconsistent with that purpose. The subrogation mentioned in the bond to be forthwith made in case of default and payment of a claim thereunder did not contemplate a subrogation which should lessen the recovery of the city, but only a subrogation in harmony with the purpose of the bond, which must have been upon such payment and under such conditions as would preserve all the rights to the city to receive its full debt. In other words, the subrogation not being stated otherwise, must be considered as in harmony with the obligation to well and truly keep all sums of money deposited by the city and pay over the same and each and every part thereof.

Counsel for petitioner cite *Ex parte Rushforth*, 10 Vesey, Jr., 409, in which a bond with surety in the penalty of £10,000 was conditioned for the payment of such sums as would be advanced to the principal. Twenty thousand pounds were advanced to the principal, who then became bankrupt. The surety paid

the penalty and sought subrogation against the estate of the principal. In the opinion Lord Chancellor Eldon said:

''I think the bankers are not entitled in equity to say as against the surety that their demand is more than £10,000, the amount of the bond he has given, upon which he would be *prima facie* entitled to stand in their place; as to the residue of their debt they ought to be considered, if I may so express it, as their own insurers.''

We think there is fault in the reasoning of this case, and that it is not in harmony with the principles of equity governing the doctrine of subrogation. The condition of the bond was to pay such sums as would be advanced to the principal without limiting the amount which should be advanced. The fault in the reasoning is readily seen when it is considered that the obligee may first apply all that the principal obligor can pay, and then resort to the bond for any amount left unpaid not exceeding the amount of the penalty; for it is the final amount left unpaid by the principal which is intended to be secured by the surety.

It results that, in our judgment, there was no error in the decree of the chancellor, and it is affirmed.