S. A. OLSNESS, as Commissioner of Insurance of the State of North
Dakota, Acting for and in Behalf of the State Bonding Fund of the
State of North Dakota, Appellant, v. L. R. BAIRD, as Receiver
of the Slope County State Bank of Amidon, North Dakota, and
J. S. Douglas, Respondents.

(201 N. W. 993.)

**Subrogation — surety is not subrogated to rights of creditor as against par-
tially satisfied creditor.**

1. Where a principal debtor is in default and a surety who is bound for
a portion of the principal obligation discharges the debt to the extent of his
liability, paying less than the amount for which the principal is indebted,
the surety is not subrogated to the rights of the creditor against third parties
to the extent that it may seek reimbursement from such source in competition
with the partially satisfied creditor.

**Insurance — state bonding fund held not to have right of subrogation in
competition with partially satisfied creditor.**

2. Section 10 of chapter 158 of the Laws of 1919, which provides that the
State Bonding Fund shall be subrogated to the right of the judgment creditor
upon paying the judgment rendered against it or the principal on account of
the default of the principal, does not amount to a contract giving to the
Bonding Fund a right of subrogation in competition with the creditor where
the creditor's claim is only partially satisfied.

52 N. D.—1.

Subrogation — to permit subrogation pro tanto to detriment of obligee or creditor, contract right must be clear and certain.

3. Where a claim to pro tanto subrogation is based on contract, the contract right must be clear and certain before subrogation will be permitted thereunder to the detriment of the obligee or creditor.

· Opinion filed December 13, 1924. ·

Insurance, 33 C. J. § 714 p. 43 n. 42.  Subrogation, 37 Cyc. p. 408 n. 69; p. 409 n. 76, 77; p. 410 n. 81 New.

. Appeal from the District Court of Burleigh County, *Cooley*, J. Affirmed.                              •

*Charles L. Crum*, for appellant.

*Zuger & Tillotson*, for respondent L. R. Baird.

BIRDZELL, J.  This is an appeal from a judgment for the defendant entered in pursuance of an order sustaining a demurrer to the complaint.  The facts alleged in the complaint are substantially as follows: From May 1, 1919 to May 1, 1921, the defendant J. S. Douglas was treasurer of Slope County; as such he was bonded by the State Bonding Fund in the sum of $50,000.  During his term of office, he deposited more than $90,000 in the Slope County State Bank of Amidon and in the First State Bank of Amidon in such circumstances as to break the conditions of his official bond, the banks not being legal depositaries.  At the expiration of his term of office in May, 1921, he was unable to deliver to his successor the amount of the monies thus placed on deposit by him, whereupon an action was brought by the county against Douglas and the State Bonding Fund and a judgment obtained for the full amount of the bond, which judgment, with interest and costs, amounted to $56,954.51.  (See 49 N. D. 1026, 194 N. W. 385.)  This was paid by the State Bonding Fund.

The banks in question have failed and their assets are in possession of the defendant Baird, as receiver.  It is the contention of the plaintiff that when the State Bonding Fund paid the judgment against it, it became ipso facto subrogated to the rights of Slope County against the banks and that it might participate in the assets as such subrogee, notwithstanding the fact that the judgment paid by it was for approximately $40,000 less than the amount for which the principal debtor

Douglas was liable to the county. It is the further contention of the plaintiff and appellant that since the two banks in question had not been designated as legal depositaries, the deposit of funds therein by the county treasurer constituted the banks trustees of the public funds so deposited; that the assets of the two banks were increased by reason of these deposits and that they are impressed with a trust to the extent thereof; that the State Bonding Fund, having discharged, to the full extent of its liability, the obligations of the county treasurer, is entitled to a preferred claim to the assets so held in trust and to be paid before general creditors of the banks are paid.

It is the contention of the respondents that the State Bonding Fund is not subrogated to any rights that Slope County had against the banks in question, for the reason that the fund has only discharged a portion of the liability of the treasurer to the county. The contention is further advanced that the deposits made by the treasurer were commingled with other funds and had been handled like ordinary deposits long prior to the closing of the banks, and that, consequently, no trust fund can be identified; also that, in any event, if a trust exists as contended, the county would be a beneficiary and it is not made a defendant here.

If the surety, by paying a part of the debt which the county treasurer owed to the county, did not become subrogated to the rights of the county against the principal debtor, it would have no standing as a beneficiary of the trust, if such trust exists. It is not essential, therefore, to the determination of the issues present upon this appeal, to decide whether or not a trust exists in favor of the county, unless the principal contention of the appellant is upheld. The first and primary consideration, then, is whether or not the right of subrogation exists under the facts pleaded in the complaint.

The appellant calls attention to § 10 of chapter 158, Laws of 1919, which reads as follows:

"Any person or corporation injured by the default or wrongful act of any such public employee may sue such public employee and join the State Bonding Fund as co-defendant, and in case judgment is obtained against such public employee, the judgment shall further specify that such judgment shall be paid out of any funds on hand, in the State Bonding Fund, or that may thereafter accrue to such fund. In case a judgment is paid out of the State Bonding Fund in any such

action, the State Bonding Fund shall be subrogated under the judgment to the right of the judgment creditor to recover against such public employee. In all proceedings to enforce such right of subrogation the Commissioner shall act for and in behalf of the State Bonding Fund, and may in any action or proceeding appeal from any appealable order or from any judgment against said State Bonding Fund the same as is provided for other parties to civil actions."

It is said that this statute, in mandatory terms, provides that subrogation shall take place whenever the State Bonding Fund shall pay any judgment obtained against it on account of defaults of bonded officials, and it is argued that this statute must be considered as a part of the contract between the State Bonding Fund and the obligees of its bonds (Laws 1919, § 5, chap. 158); and that, properly construed, it amounts to a contract that the Bonding Fund shall be subrogated to all the rights of the judgment creditor whenever the judgment is paid without regard to whether or not the obligation owing to such creditor is fully discharged by the principal debtor or the surety.

The appellant seems to concede that in the absence of a contractual right of subrogation such as is contained in the statute, construed according to its contention, it would not be entitled to the priority which it seeks. Undoubtedly, the law as established by the general current of authorities is that the equitable right of subrogation can not be asserted by a surety in competition with the partially satisfied creditor. 27 Am. & Eng. Enc. Law, 2d ed. p. 209; 1 Brandt, Suretyship & Guaranty, 3d ed. §§ 337 and 338; 25 R. C. L. pp. 1318 and 1319; Barton v. Matthews, 141 Ark. 262, 216 S. W. 693, 9 A.L.R. 1594 and cases cited in note, page 1596 et seq.; Bartholomew v. First Nat. Bank, 57 Kan. 594, 47 Pac. 519; Board of Health v. Teutonia Bank & T. Co. 137 La. 422, 68 So. 748, Ann. Cas. 1916B, 1251; State ex rel. Moore v. Perkins, 114 La. 302, 38 So. 196; Knaffl v. Knoxville Bkg. & T. Co. 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C, 1181. Is this rule changed by the statute which the appellant invokes? The language relied upon is "In case a judgment is paid out of the State Bonding Fund in any such action, the State Bonding Fund shall be subrogated under the judgment to the right of the judgment creditor to recover against such public employee." For the purpose of this opinion, we shall attach no importance to the fact that the present suit

is not against the public employee, but we shall regard the statute as expressing a right of subrogation extending to any funds that the county could reach through the employee or otherwise. The inquiry, then, is simply this, whether or not this statute so changes the law relating to subrogation as to enable the State Bonding Fund, after answering partially for the default of a public employee, to participate in competition with the obligee of the bond in funds to which it is necessary for the latter to resort, if it is to be made whole. We are of the opinion that the statute does not change the law to the extent contended for.

It is said in 25 R. C. L. p. 1319, that "where the claim to a pro tanto subrogation is based on a contract, before a court will permit subrogation that would be to the detriment of the obligee the contract should be so certain as to admit no doubt on that question." Similarly, we are of the opinion that before we would be warranted in construing the statute in question as providing for a contract right of subrogation pro tanto which differs so radically from the right of subrogation so long recognized in equity, there should be some clear evidence in the statute of a legislative intention to make such a contract and such change. We are of the opinion that the language quoted from § 10, chapter 158 of the Laws of 1919, does not sufficiently indicate that intention. Rather, we are of the opinion that it simply declares the right to exist where the State Bonding Fund pays a judgment, subject to the equitable principles generally obtaining, one of which is that subrogation is subservient to the right of the creditor to be paid in full without being disturbed by the competition of the surety.

In the case of Knaffl v. Knoxville Bkg. & T. Co. supra, the surety relied upon the contract right of subrogation and the contract expressed that right more favorably to the surety than the statute expresses the similar right in the case at bar. The bond contained this provision (133 Tenn. 660, 182 S. W. 233):

"In case of default hereunder and the payment of a claim under this bond, the said surety shall be *forthwith subrogated* to all the rights of the said city of Knoxville against the said bank, its receiver, or any person or corporation as respects such funds *to the amount of such payment;* and the city of Knoxville, Tennessee, covenants to execute all

papers required and to co-operate with the said surety in order to secure for the said surety such rights." (Italics are ours.)

In discussing the contention that this gave a contract right of subrogation available to the surety who had discharged the bond to the full extent, which, however, was less than the loss sustained by the city, the court said (page 660 [182 S. W. 233]):

"This provision must be considered in connection with the undertaking, of which it is a part, to secure the city against all loss. It does not provide for subrogation pro tanto upon payment of a part of the obligee's claim. The bond was not to pay a particular $25,000, but was an obligation to pay any deficit left unpaid by the principal, to the extent of $25,000.

"Had it chosen to do so, the city might have deferred action on the bond until it had received the last dollar from the receiver, and then it could sue the surety on the bond and recover the full amount of the penalty, not exceeding the total debt unpaid. But the city did not have to exhaust the assets of the principal before a recovery from the surety. The fact that it recovered judgment and received payment from the surety before exhausting the principal does not alter the case.

"We are of opinion that this contractual subrogation is nothing more than the usual equitable right which the surety would have without stipulation. Before the court would permit a subrogation in favor of a surety that would be to the detriment of the obligee in the bond, the contract should be so certain as to admit of no doubt on that question. . . . The subrogation mentioned in the bond to be forthwith made in case of default and payment of a claim thereunder did not contemplate the subrogation which should lessen the recovery of the city, but only a subrogation in harmony with the purpose of the bond, which must have been upon such payment and under such conditions as would preserve all the rights of the city to receive its full debt."

We think this reasoning is applicable with all its force to the contentions made in the instant case. At most, the statute could only amount to a contract right of subrogation and we do not find in the statute any language manifesting with any degree of clearness a legislative purpose to permit the bonding fund as a surety to weaken the position of the partially paid obligee.

Judgment affirmed.

CHRISTIANSON, NUESSLE, and JOHNSON, JJ., concur.

BRONSON, Ch. J. (dissenting). The majority decision, in my opinion, practically, in many respects, repeals or renders nugatory the specific statutory provision for subrogation in favor of the State Bonding Fund where a judgment has been paid out of the fund.

The primary question, as I see it, is not whether the State Bonding Fund is entitled to the equitable right of subrogation so as to compete with a partially satisfied creditor, namely, its obligee, the county. Rather, the question is presented whether the Bonding Fund, in equity and by force of the statute, shall be represented in the distribution of its principal's assets, so that the claim of its obligee may be fully represented as against other creditors and so that such claim in full may participate with the question of the distribution of the proceeds secured upon such claim from the principal's estate left to principles of equity as between the obligee and the Bonding Fund.

The evident intent and purpose of the statute is at least to preserve the status of a creditor against an insolvent fund and to protect a Bonding Fund that has made a payment in advance as a surety for such insolvent fund. Principles of equity, under the circumstances, should not be employed so as to destroy both the status and the protection intended.

For instance, by way of illustration:—The assets of an insolvent principal are $50,000.00; the claims of creditors are $100,000.00; the claim of the obligee in a bond against the principal is $10,000.00. The bond is for the sum of $5,000.00. The surety in advance of the distribution of the assets of the insolvent fund has paid to the obligee, $5,000.00, in satisfaction of its bond and covenant. Upon distribution of the assets of the insolvent principal, how much then is the claim of the obligee? My answer is $5,000.00; then, it is entitled to receive not 10% but 5% of the insolvent fund by reason of its diminished claim; then, other creditors are entitled to receive not 90% but 95% of the insolvent fund. The above result follows unless some principles of subrogation are employed. Upon such result it would happen that the power of competition, that is, the percentage of competition on the part of the obligee, would be lessened, and, on the part of other creditors, not secured by any bond, increased. On the other hand, if some

principles of subrogation are applied and the claim of the obligee represented fully and the surety subrogated, the competition features, that is, the percentage features between creditors, remain the same; the claim of the obligee will be fully represented; it will participate to the extent of 10%, it will receive out of the insolvent fund $5000.00; if on principles of equity, this fund of $5000.00 so due on the claim of the obligee, thus fully represented is to be distributed between the obligee and its surety who have rights thereto, then equitable distribution may occur so that the rights of the obligee, superior and prior, are fully protected. In other words, if it is necessary to take the entire $5000.00 to satisfy entirely demands of the obligee, then, its priority of right should be recognized and accorded; if, however, there remains a balance after full satisfaction of the demands of the obligee, then that balance should belong to and be distributed to the surety who has already made payment and not to other creditors not entitled thereto. Thus, in my opinion, on principles of equity may both creditor and its surety be protected, and the purpose and intent of the statute made effective.