## MARYLAND CASUALTY CO. v. SOUTHERN PAC. CO.

### No. 9584.

Circuit Court of Appeals, Ninth Circuit.

May 15, 1941.

Everett H. Smith, of Los Angeles, Cal., for Maryland Casualty Co.

W. I. Gilbert, of Los Angeles, Cal., for Southern Pac. Co.

E. E. Bennett, Edward C. Renwick, and Malcolm Davis, all of Los Angeles, Cal., for Union Pac. R. Co.

Robert Brennan, M. W. Reed, and E. T. Luccy, all of Los Angeles, Cal., for Atchison, T. & S. F. Ry. Co.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

In December, 1932, the Pioneer Truck & Transfer Company of Los Angeles, the Pioneer Truck Company of Los Angeles, and California Truck Company, Inc., as principals, and the defendant Maryland Casualty Company, as surety, executed and delivered to the plaintiffs Southern Pacific Company, Union Pacific Railroad Company and the Atchison, Topeka and Santa Fe Railway Company their joint and several bond in the sum of $15,000, guaranteeing transportation charges. This bond was in effect at all times material to the issues of this case.

For convenience we shall hereinafter refer to the principals on said bond as Truck Companies, to the surety as Surety, and to the plaintiffs as Railway Companies.

The bond contained the following provision:

"Third: In the event of payment by the Surety of any claim hereunder the Surety shall be subrogated to all the rights of obligee with respect to such claim, and the obligee shall execute the necessary assignment of the said subrogation. * * *"

Between December 1 and December 15, 1937, the Railway Companies delivered to the Truck Companies "collect" shipments of merchandise upon which the transportation charges had not been paid. In this manner the Truck Companies became indebted to the Railway Companies [the aggregate owed to the three companies] in the sum of $71,460.21. On December 24, 1937, the Truck Companies were adjudicated bankrupt by the order of the United States District Court. Prior to the expiration of the time for filing claims in the bankruptcy proceedings the Railway Companies filed their claim for the amount of transportation charges due. Dividends aggregating $13,880.74 have been received by the Railway Companies from the trustee in bankruptcy, leaving a balance due of $57,579.47.

On December 28, 1937, the Railway Companies gave the Surety Company notice of the default of the Truck Companies, and on January 10, 1938, a claim was filed with the Surety for the sum of $15,000.

On July 22, 1938, the Surety Company tendered the sum of $15,000 to the Railway Companies upon the conditions that simultaneously with the payment of such sum (1) the Railway Companies would assign to the Surety Company a present interest in and to the claims in bankruptcy filed by the Railway Companies equal to the proportion which the sum of $15,000 bore to the total amount of delinquent transportation charges; and (2) the Railway Companies would pay to the Surety Company a like proportion of the dividends theretofore received from the trustee in said bankruptcy proceedings; and (3) the Railway Companies would assign to the Surety Company a like proportion of all claims of the Railway Companies for unpaid freight charges against the consignees of the merchandise or other persons legally liable for the transportation charges thereon.

The Railway Companies refused to accept the offer upon said conditions, and the

674

present action by the Railway Companies against the Surety Company was instituted in August, 1938. Jurisdiction of the federal court is based upon diversity of citizenship, plus the requisite jurisdictional amount.

The Surety Company filed its answer to the complaint, denying liability, and including a tender and offer to pay the sum of $15,000, conditioned upon: first, proof by the Railway Companies of their claims so as to sustain a judgment in the sum of $15,000, second, that the Court judicially construe paragraph III of the conditions of said bond; third, that the Court select or designate specific items aggregating $15,000; and fourth, that the Railway Companies execute and deliver to the Surety Company an assignment of the rights of the Railway Companies "in and to such portion of each of said claims as is represented by said aggregate sum of $15,-000.00, and as may be established by proof offered [by the Railway Companies]".

On June 13, 1939, during the pendency of the action before the District Court, the parties entered into a stipulation for the deposit of the sum of $15,000 with the Clerk of the Court "as a tender of any and/or all sums due or claimed by plaintiffs [Railway Companies] or either or any of them, under and pursuant to the conditions of said tender as set forth in the answer of said Maryland Casualty Company [Surety Company], a corporation, heretofore filed."

The stipulation further provided that it should not be deemed or construed as an admission of liability on the part of the Surety Company, or as an admission by the Railway Companies that the liability of the Surety Company is subject to the conditions of the answer or that the deposit of said sum constituted a good and sufficient tender.

There is a further provision in the stipulation that, "notwithstanding anything herein to the contrary, the said sum of money shall be retained by the Clerk of the Court until final judgment be rendered herein and be then distributed by the Court to the parties entitled thereto in accordance with the terms of said final judgment."

The case was tried before the Court without a jury, and the Court awarded judgment in favor of the Railway Companies against the Surety Company in the sum of $15,000, plus $1,601.25, being the interest on said sum of $15,000 at 7% from December 28, 1937 [the date of notice to the Surety Company that the Truck Companies had de-

faulted] to and including July 7, 1939 [the date of the deposit of the $15,000 into Court], together with interest on the entire sum of $16,601.25 at the rate of 7% from the date of the judgment until paid. No interest was allowed between the date of the deposit into Court and the date of the judgment.

No mention is made in the judgment of the claimed subrogation rights of the Surety Company, although the Court in its Conclusions of Law found, "That the defendant, Maryland Casualty Company, a corporation [Surety Company] is not entitled to a judgment declaring any of the rights of subrogation claimed by said party and set forth in its Answer filed herein."

The Surety Company and the Railway Companies both appeal from the judgment, and we shall treat the two appeals separately.

. The Surety Company's Appeal.

The Surety Company's position may best be stated by a quotation from its opening brief: "It is the appellant's contention that, due to the provision contained in the bond, and as above set forth, when appellant pays and thus discharges its total obligation and penalty, it is thereupon and forthwith entitled to an executed assignment of the subrogation rights provided for in said bond. This is one of the principal points upon this appeal, together with the second principal contention that the trial court erred in failing to find on such point, and by so failing to find denied to appellant all of said rights."

The Railway Companies' position, on the other hand, is that the Surety Company is not entitled to be subrogated to any of the claims of the Railway Companies until the Railway Companies have been paid in full, and that the Surety Company's request for a declaration of its rights of subrogation is premature.

It is obvious that if the Surety Company's request for a declaration of its rights of subrogation is premature, then the judgment of the District Court must be affirmed, insofar as the Surety Company's appeal is concerned. We shall therefore examine that question.

█ The bond contract in question was executed in California, and by its terms is to be performed in California, and is clearly to be interpreted by the law of that State.

█ While we are not cited any California cases on the subject, we are of the

opinion that California would follow the overwhelming majority American rule that in the absence of any provision in the surety contract [either express or by necessary implication] to the contrary, the Surety is not entitled to anything but equitable subrogation, as contrasted with pro tanto subrogation. See 25 R.C.L., Subrogation, Par. 6; Volume 4 Williston on Contracts, Revised Edition, Par. 1274. We quote from a note in 37 Harvard Law Review, p. 392:

"Where, from the agreement, it is evident that the surety intends to guarantee the entire debt but with a limited liability, clearly no subrogation can be allowed until the debt is fully satisfied. * * * In England, however, a creditor who advances more than the amount which the surety guarantees is prima facie deemed to be his own insurer to that extent. The surety is thus regarded as undertaking to answer for only an aliquot part of the debt. * * * But in America the surety's undertaking to answer for a part of the debt does not of itself entitle him to pro tanto subrogation. Where the parties have expressly stipulated for pro tanto subrogation, their contract will naturally govern. * * * In the absence of such express stipulation, their intent would seem to be that the creditor receive full satisfaction before the surety participates. * * * It is for this reason that the surety is not subrogated to a part of the security held to cover his debt. * * Contrary to what would seem to be the ordinary business understanding, the English courts allow pro tanto subrogation in both of these cases. * * * The surety is always entitled to any surplus received by the creditor."

See also United States v. National Surety Company, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143.

Cole v. Myers, 1916, 100 Neb. 480, 160 N. W. 894 cited by the Surety Company as an exception to the general rule that a surety is entitled to no subrogation until the debt is fully satisfied, is not in point. There the court was concerned with a statutory bond to secure sums on deposit belonging to the County of Nuckolls. The statute provided that "The treasurer shall not have on deposit in any bank at any time more than the maximum amount of the bond given by said bank in cases where the bank gives a guaranty bond." St.Neb.1913, § 6662. The Court said that because of that statute the surety in entering into the contract of suretyship had a right to assume that the treasurer would comply with the statute and limit his deposit to $10,000 the amount of the bond—that in paying the amount of the bond the surety not only discharged its legal liability, *but also discharged the entire debt to secure which the bond was given.* No such situation is present in the instant case. There is nothing to limit the condition of the bond, which reads,

"'* * * The condition of this obligation is such that if said Principal shall upon demand of the Railway Company or Companies pay or cause to be paid *all transportation charges* required by tariff to be prepaid or which may accrue on shipments as to which the tariff requires prepayment or guarantee, and shipped by said Principal * * * and shall upon demand of said Railway Company or Companies pay or cause to be paid *all transportation charges* which may accrue upon shipments consigned by or shipped to the Principal * * * then this obligation shall be void, otherwise to be in full force and effect." (Italics supplied.)

The limit of liability specified in the bond is $15,000, but there is nothing in the bond which specifies or implies that the Railway Companies should not allow their indebtedness to exceed that amount.

Furthermore, the Cole case, supra, was a suit involving the conflicting rights of two surety companies to subrogation. The bonding company for the bank paid the $10,000 which was the limit of its liability, and the bonding company for the treasurer paid the remainder of the County's loss. The obligee of the bond had been made whole, and there was no longer any reason for withholding the right of subrogation from the sureties.

Whether or not the Surety Company's request for a declaration of its rights of subrogation is premature, then, depends upon whether provision "Third" quoted above was intended to change this general rule. The Surety Company urges that it was so intended, and cites many cases to the effect that it is lawful for the parties to stipulate in their bond to giving the surety proportionate subrogation on payment of any portion of the obligee's loss.

The case of Knaffl v. Knoxville Banking & Trust Co., 1916, 133 Tenn. 655, 182 S.W. 232, 233, Ann.Cas.1917C, 1181, is on all fours with the instant case.

There the bond provided that "In case of default hereunder and the payment of a

claim under this bond, the said surety shall be forthwith subrogated to all the rights of the said city of Knoxville against the said bank, its receiver, or any person or corporation as respects such funds to the amount of such payment; and the city of Knoxville, Tennessee, covenants to execute all papers required and to co-operate with the said surety in order to secure for the said surety such rights."

The obligee of the bond had not been made whole, although the bonding company had paid the full amount of its liability under the bond. In denying the right to pro tanto subrogation the Court pointed out that the bond was an obligation limited to $25,000, but conditioned that the bank should well and truly keep all sums of money and pay over the same and each and every part thereof. In interpreting the quoted subrogation clause of the bond, the Court said,

"This provision must be considered in connection with the undertaking, of which it is a part, to secure the city against all loss. It does not provide for subrogation pro tanto upon payment of a part of the obligee's claim. The bond was not to pay a particular $25,000, but was an obligation to pay any deficit left unpaid by the principal, to the extent of $25,000.

"Had it chosen to do so, the city might have deferred action on the bond until it had received the last dollar from the receiver, and then it could sue the surety on the bond and recover the full amount of the penalty, not exceeding the total debt unpaid. But the city did not have to exhaust the assets of the principal before a recovery from the surety. The fact that it recovered judgment and received payment from the surety before exhausting the principal does not alter the case.

"We are of opinion that this contractual subrogation is nothing more than the usual equitable right which the surety would have without stipulation. Before the court would permit a subrogation in favor of a surety that would be to the detriment of the obligee in the bond, the contract should be so certain as to admit of no doubt on that question. In the present case the main object of the bond was to secure and save harmless the city of Knoxville on all deposits it might make in the Knoxville Banking & Trust Company. We see no provision in the contract for a subrogation inconsistent with that purpose."

In Maryland Casualty Co. of Baltimore, Md. v. Cincinnati, C. C. & St. L. Ry. Co., 1919, 74 Ind.App. 272, 124 N.E. 774, 775 the Court was concerned with the interpretation of a bond provision reading, "In case of the payment of loss or expense under this policy, the company shall be subrogated to all the rights of this employer or any employé or dependent covered hereby to the extent of such payment, and this employer shall execute all papers required and shall cooperate with the company to secure such rights."

We quote from the opinion of the Court in the cited case, "This provision must be considered in connection with the other portions of said policy, and when this is done it is apparent that it should be construed as an attempt to confer the right of subrogation on appellant only in the event it has paid the whole liability due in any given case, and not an attempt to provide for subrogation pro tanto."

In Olsness v. Baird, 1924, 52 N.D. 1, 201 N.W. 993, 995 the Court was concerned with a statute providing, "In case a judgment is paid out of the state bonding fund in any such action, the state bonding fund shall be subrogated under the judgment to the right of the judgment creditor to recover against such public employee". Laws N.D.1919, c. 158, § 10.

The contention was there made that the statute provided for a pro tanto subrogation when any claim was paid. The Court quoted from 25 R.C.L., p. 1319,

" 'Where the claim to a pro tanto subrogation is based on a contract, before a court will permit subrogation that would be to the detriment of the obligee the contract should be so certain as to admit no doubt on that question * * *' ", and said,

"Similarly, we are of the opinion that before we would be warranted in construing the statute in question as providing for a contract right of subrogation pro tanto, which differs so radically from the right of subrogation so long recognized in equity, there should be some clear evidence in the statute of a legislative intention to make such a contract and such change. * * *

"At most, the statute could only amount to a contract right of subrogation, and we do not find in the statute any language manifesting with any degree of clearness a legislative purpose to permit the bonding fund as a surety to weaken the position of the partially paid obligee."

See also Washington Tp. Board of Finance v. American Surety Co. of New York, Ind.App., 1932, 183 N.E. 492; United States v. National Surety Co., 1920, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143.

Reading the subrogation provision of the bond in the instant case in the light of the cited authorities, it seems clear that it is no more than a statement of the doctrine of equitable subrogation. Nothing is said about a pro tanto subrogation, and as said in the Knaffl case, supra, "Before the court [will] permit a subrogation in favor of a surety that would be to the detriment of the obligee in the bond, the contract should be so certain as to admit of no doubt on that question".

The decision of the District Court, insofar as the Surety Company's appeal is concerned, is affirmed.

We turn, therefore, to the appeal of the Railway Companies.

### The Railway Companies' Appeal.

The Railway Companies complain that the trial court did not allow them interest on the $15,000 during the time that the sum was deposited with the court under the stipulation of the parties hereinbefore referred to.

As we have said, it was stipulated that the $15,000 should be deposited with the clerk of the court as a tender "under and pursuant to the conditions of said tender as set forth in the answer" of the Surety Company. One of these conditions was that the Railway Companies should execute and deliver to the Surety Company an assignment of the rights of the Railway Companies "in and to such portion of each of said claims as is represented by said aggregate sum of $15,000.00, as may be established by proof offered [by the Railway Companies]". The stipulation contained a provision that it should not be deemed to be an admission by the Railway Companies that the deposit of said sum constituted a good and sufficient tender.

We have held in our consideration of the Surety Company's appeal that the Surety Company has no right to subrogation until such time as the Railway Companies have been made whole on the indebtedness of the Truck Companies. It follows, therefore, that the condition of the tender that the Railway Companies execute and deliver to the Surety Company an assignment of a pro rata share of the claims against the bankrupt Truck Companies was one that the Surety Company had no right to impose.

We quote from 33 Corpus Juris, Interest, § 149: "While it has been said that a conditional tender is not good to stop the running of interest, whether the offer is to pay money to the creditor, or into court, the better rule appears to be that the tender of the principal sum due upon a condition reasonable in itself and which the debtor has a right to impose will suspend the running of interest from the date of such tender * * * but it is otherwise if the condition is unreasonable or one which the debtor has no right to impose."

The Surety Company, however, calls attention to the portion of the stipulation providing that "notwithstanding anything herein to the contrary, the said sum of money shall be retained by the Clerk of the Court until final judgment be rendered herein and be then distributed by the Court to the parties entitled thereto in accordance with the terms of said final judgment", and urges that the quoted provision eliminates any question of an unreasonable condition attached to the tender.

We do not agree. The provision quoted was a further restriction on the rights of the Railway Companies, and prohibited them from withdrawing the money during the pendency of the action, as they ordinarily would have the right to do. See 62 Corpus Juris, page 695.

It is our opinion and we hold that the trial court erred in not allowing the Railway Companies interest on the $15,000 from July 8, 1939, to October 4, 1939. The judgment of the District Court is reversed with instructions to modify the same so as to allow interest at the rate of 7% during said period. In other respects the judgment is affirmed.