BLAIR, SUPT. OF BANKS, *v.* BOARD OF EDUCATION OF PRAIRIE TOWNSHIP, FRANKLIN COUNTY, ET AL.

(Decided April 11, 1930.)

*Mr. Gilbert Bettman,* attorney general, *Mr. L. F. Laylin* and *Mr. J. A. Godown,* for plaintiff.

*Mr. John J. Chester, Jr., Mr. Myron B. Gessaman* and *Mr. Robert J. Odell,* for defendant Board of Education.

*Messrs. Vorys, Sater, Seymour & Pease,* for the Ohio Casualty Insurance Company.

KUNKLE, J. The pleadings show that in February, 1926, the board of education of Prairie township, Franklin county, Ohio, designated the Commercial Bank of West Jefferson as the depository of

the funds of the said board; that a depository bond was executed with the bank as principal and the Ohio Casualty Insurance Company as surety to secure the deposit of the monies of the said board of education in said Commercial Bank to the extent of $10,000, that being the amount of the bond; that in May, 1927, the superintendent of banks took over the said Commercial Bank of West Jefferson for the purpose of liquidating the same according to law; that when the said superintendent of banks so took over the Commercial Bank, the board of education of Prairie township had on deposit in the bank $32,376.89; that later, namely, in December of 1927, a dividend of 20 per cent was paid by the said superintendent of banks to the said board of education and others; that in August of 1928 the defendant the Ohio Casualty Insurance Company paid to said board of education the sum of $10,300, that being the amount of its bond with interest, and that thereupon the said Insurance Company filed proof of its claim with the superintendent of banks, claiming that on account of said payment by it to the said board of education there was due the said insurance company from the said liquidator of the said bank the sum of $10,300; that in September of 1928 an additional dividend of 20 per cent was paid by the said liquidator of the said bank to the said board of education, making a total payment to the said board of education of $12,950.75 on its claim of $32,376.89.

The pleadings further show that $4,120 of said amount was paid into court upon the representation of the superintendent of banks that said amount was paid to the board by mistake, as it was intended to

pay the same into court and abide the judgment of the court upon the conflicting claims of the said insurance company and the said board of education as to said sum of $4,120.

The sum of $4,120 represents 40 per cent. on the amount of the insurance company's claim, and this amount is still in the hands of the court awaiting disposition. The board of education and the insurance company filed interpleaders asserting their claims to this fund. The insurance company filed a cross-petition in which it asked that the court order the plaintiff, the superintendent of banks, to allow the said insurance company's claim for $10,300, and further order that the sum $4,120 above referred to, be ordered paid to it, namely, the insurance company.

The board of education filed a demurrer to this cross-petition upon the ground that the same did not state facts sufficient to constitute a cause of action, in that it admitted that the claim of the board of education had not yet been paid in full.

The lower court sustained the demurrer, holding that the said insurance company was not entitled to any portion of the $4,120, but that the board of education was entitled to the said sum, and further held that the claim of the insurance company for $10,300 should be allowed as a general claim, and that the liquidator should compute and pay dividends on same.

From such judgment an appeal has been taken to this court. Counsel have presented several very interesting questions to the court, and have favored us with exhaustive briefs in which many of the leading authorities in this and other jurisdictions are

cited and discussed. It will not be necessary to analyze or discuss in detail the authorities so cited.

The insurance company, in brief, urged the following claims:

First, that it is entitled to subrogation pro tanto to the amount paid by it on the bond.

Second, that there are two debits owing by the said bank to the board of education, namely, one for the amount covered by the bond, and the other for the balance of the deposits in said bank.

Third, that if it is not entitled to the dividends, it is entitled to have its claim allowed as a general creditor upon its contract of indemnity.

An examination of the authorities satisfies us that the insurance company cannot be subrogated to the creditor, unless the entire indebtedness of the creditor is paid. See *United States* v. *National Surety Co.*, 254 U. S., 73, 41 S. Ct., 29, 65 L. Ed., 143, and other authorities cited.

We are also clearly of opinion that the second claim of the insurance company is not well taken and that it is not entitled to have the amount paid by it deducted from the claim of the board of education and to receive its *pro rata* share of the dividends on the amount so paid. To permit this would in effect be subrogating the insurance company *pro tanto*.

Is the insurance company entitled to have its claim allowed as a general creditor, and share in the funds as a general creditor?

This question is not as free from doubt as the ones above referred to, but from an examination of the various authorities we are of opinion that it is now settled that the claim of the board of education must

be paid in full before the surety can participate in dividends on its claims, whether such claim arises by reason of subrogation, express or implied contract of indemnity, or otherwise.

We think the decision of the Supreme Court of the United States in the case of *Jenkins, Recr.,* v. *National Surety Co.,* 277 U. S., 258, 48 S. Ct., 445, 72 L. Ed., 874, is decisive of this proposition. This case was not available to the lower court when the case was originally decided.

Justice Stone, in delivering the opinion of the court in the *Jenkins case,* states, among other things, at pages 266 and 267 of 277 U. S., 48 S. Ct., 445, 446:

"But if, as here, the principal is insolvent, any dividends paid the surety on its claim for indemnity before the creditor's whole claim has been satisfied would decrease the creditor's dividends by his proportionate share of the payments to the surety. They would also result in a species of double proof, detrimental to the principal's other creditors, for the secured creditor would, under the applicable 'chancery rule,' still be entitled to dividends on his entire original claim. Compare *Merrill* v. *National Bank of Jacksonville,* 173 U. S., 131. [19 S. Ct., 360, 43 L. Ed., 640.]

"Respondent, in insisting on the letter of its agreement, takes a position in effect inconsistent with its obligation to secure to the treasurer the repayment of his deposits to the extent of $125,000. If after paying that amount to the treasurer it may then compete with him in the distribution of the insolvent's assets, the treasurer's recovery on the balance of his claim is reduced accordingly and the benefit

of the surety bond to the treasurer is diminished *pro tanto.* By the expedient of taking a separate indemnity agreement from the debtor the surety would be enabled to deprive the creditor of the full benefit of the security he had demanded.

"The established rule that the surety may not claim subrogation against an insolvent debtor until the creditor is paid in full is a recognition of the inconsistency of that position. *United States* v. *National Surety Co.,* 254 U. S. 73, 76 [41 S. Ct., 29, 65 L. Ed., 143]; *Peoples* v. *Peoples Bros.* [D. C.], 254 Fed. 489; *United States Fidelity & Guaranty Co.* v. *Union Bank & Trust Co.* [C. C. A.], 228 Fed. 448, 455. The rule would go for naught if, by claiming indemnity instead of subrogation, the surety could achieve the same result. The same policy against permitting a surety to compete with the creditor for the insolvent debtor's assets requires that the surety be denied subrogation to security given to a creditor for several debts for only one of which the surety is obligated. *National Bank of Commerce* v. *Rockefeller,* [C. C. A.], 174 Fed. 22. Similar reasoning underlies the requirement of equity that the surety who holds the security of an insolvent debtor must give the benefit of it to the creditor for whom he is surety, until the debt is fully paid. See *Keller* v. *Ashford,* 133 U. S. 610 [10 S. Ct., 494, 33 L. Ed., 667]; *Hampton* v. *Phipps,* 108 U. S. 260 [2 S. Ct., 622, 27 L. Ed., 719]; *Chamberlain* v. *St. Paul,* 92 U. S. 299, 306 [23 L. Ed., 715]; 2 Pomeroy, Equitable Remedies (2d ed.), Section 925."

The pleadings disclose, as above stated, that the claim of the board of education against the bank

amounts to $32,376.89; that it has received through dividends $12,950.75, and from the surety company $10,300, making a total of $23,250.75; that of the $12,950.75 so received by way of dividends $4,120 thereof has been returned into court to await the decision of the court in this case. It is admitted that the full amount of the claim of the board of education has not and will not be paid out of the funds of the bank.

Counsel for the surety company rely to some extent upon the decision of our Supreme Court in the case of *Madison National Bank of London, Ohio,* v. *Weber, Exrx.,* 117 Ohio State, at page 290, 158 N. E., 543, 60 A. L. R., 199.

It will be noted that Judge Marshall in rendering the decision of the court states, at page 293 of 117 Ohio State, 158 N. E., 543, 544:

"It must further be borne in mind that the Webers were guarantors, and not sureties or insurers, and, while these terms have in many instances been employed indiscriminately, there are certain well-defined distinctions and differences in the nature of the legal obligations created."

We think the case at bar is clearly distinguishable from the above-mentioned case.

Upon a consideration of the authorities, we are of opinion that the surety company is not entitled to participate until the indebtedness to the school board is paid in full.

*Decree accordingly.*

ALLREAD and HORNBECK, JJ., concur.