WASHINGTON TOWNSHIP BOARD OF FINANCE *v.* AMERICAN SURETY COMPANY OF NEW YORK ET AL.

[No. 14,513. Filed December 15, 1932. Rehearing denied February 24, 1933. Transfer denied April 25, 1933. Petition to reinstate denied May 19, 1933.]

*Cloe, Campbell, Cloe & Cloe,* for appellant.

*Henry M. Dowling* and *William F. Little,* for appellees.

KIME, P. J.—The State Bank of Westfield was duly

selected as a depository of public funds by the Washington Township Board of Finance. The said bank was qualified to receive funds to the amount of $20,000.00, and executed and delivered to appellant herein a bond in the penal sum of $10,000.00, with the appellee, American Surety Company of New York, as surety thereon. The bond contained the following clause:

"In the event of vountary or involuntary liquidation of the affairs of the principal the sureties may, and on demand by the obligee must, pay to the obligee the full amount of their obligation in such particular case. If the amount thus paid by the sureties does not equal the whole amount of the principals' obligation to the obligee, then the sureties shall not participate in dividends out of the assets of the principal until the obligee shall have received dividends equal to the excess of the principals' obligation to it over the amount paid to it by the sureties; and until the obligation of the principal to the obligee has been paid in full the obligee shall receive all dividends paid on the whole amount of the principals' obligation to it the same as if the sureties had paid nothing to the obligee. When the obligee shall have been paid the full amount of the obligation of the principal to it, then the obligee, through its proper officers, shall make all necessary assignments to the sureties to enable them to collect such dividends from the assets of the principal to which they may be legally entitled due to performance of their obligation hereunder."

Thereafter, on January 13, 1931, the said bank closed, and on said date appellant had on deposit herein public funds in the sum of $11,481.26. At appellant's request, appellee surety company paid its full bonded liability of $10,000.00 to appellant and received from the latter what appears to be an assignment or agreement for subrogation of that portion of the claim against the insolvent bank as was represented by such payment. That part of the agreement that is material here, omitting the recitals, is as follows:

"NOW, THEREFORE, in consideration of the payment by the said American Surety Company of New York to the Washington Township Board of Finance of the sum of Ten Thousand Dollars ($10,000.00), the receipt of which is hereby acknowledged, and of the recitals hereinabove mentioned, the said Washington Township Board of Finance does hereby remise, release and forever discharge the said American Surety Company of New York from any and all liability of every nature and description whatsoever on the said bond hereinabove mentioned, and further does hereby assign, transfer and set over unto the American Surety Company of New York, its successors and assigns its said claim against the State Bank of Westfield to the extent of Ten Thousand Dollars ($10,000.00) thereof, and does hereby subrogate the said American Surety Company of New York in and to all the rights, claims, choses in action and remedies thereunder of the Washington Township Board of Finance against the State Bank of Westfield to the extent of Ten Thousand Dollars ($10,000.00)."

By reason of the above referred to payment of Ten Thousand Dollars, there was left $1,481.26 owing by the State Bank of Westfield directly to appellant. Appellant filed its claim for this amount in the receivership of said bank, and asserted a right to receive distributive dividends computed upon the entire claim of $11,481.26 until the sum of $1,481.26 was paid to it in full.

Appellee surety company, by leave of court, filed its intervening petition in said receivership, claiming a right to distributive dividends on the basis of a $10,000.00 non-preferred claim. It disputed the right of appellant to receive all dividends on the entire indebtedness of $11,481.26 to the exclusion of the American Surety Company, but sought to share pro rata with appellant in distributive dividends on the basis of the respective amounts of $10,000.00 and $1,481.26.

Appellant filed a reply in two paragraphs, the first

being a general denial and the second alleging that the pretended assignment from appellant to the American Surety Company of New York was executed without consideration.

The trial court decided in favor of appellee, and rendered judgment allowing the claim of appellee surety company as a general claim in the sum of $10,000.00, and the claim of the Washington Township Board of Finance against the State Bank of Westfield as a general claim in the sum of $1,481.26. It was further adjudged that the surety company receive all dividends thereafter allowed and paid by the receiver on account of said deposit of $10,000.00, and that the Washington Township Board of Finance receive all dividends thereafter allowed and paid on account of said deposit of $1,481.26.

Appellant filed a motion for a new trial, the first two specifications therein being that the decision of the court is not sustained by sufficient evidence, and is contrary to law. There are other assignments but these are all that are necessary to this decision.

The only error assigned here is the alleged error of the court in overruling appellant's motion for a new trial.

It is argued by appellant that the purported assignment or agreement for subrogation signed by it does not grant the appellee surety company the right to participate in the dividends of the State Bank of Westfield until appellant has received the full amount of its deposit, whereas appellee contends that the express agreement above set out granted appellee an equal status with appellant in its right to claim against the insolvent's estate. It is further contended that said agreement was a waiver of that portion of the appellee's bond wherein the right of participation was mentioned.

The decisions of the courts of this country and of the various text writers are almost unanimous in holding that a surety has no right of subrogation until the claim upon which he is surety has been paid in full or otherwise entirely satisfied. This principle applies not only to cases where the surety's liability is limited in amount, but to cases where there is no such limit. *Opp* v. *Ward et al.* (1890), 125 Ind. 241, 24 N. E. 974, 21 Am. St. Rep. 220; *Stuckman* v. *Roose et al.* (1897), 147 Ind. 402, 46 N. E. 680; *Vert* v. *Voss et al.* (1881), 74 Ind. 565; *Morrow et al.* v. *U. S. Mortgage Co.* (1884), 96 Ind. 21; *Fife* v. *Ohio Investment Co.* (1913), 52 Ind. App. 108, 100 N. E. 392; *U. S. Fidelity & Guaranty Co.* v. *Centropolis Bank* (1927), 17 Fed. (2nd) 913, 53 A. L. R. 295; *Knaffe* v. *Knoxville Bank & Trust Co.* (1915), 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C 1181; *Blair, Supt. of Banks* v. *Board of Education, etc.* (1930), 38 Ohio App. 303, 176 N. E. 99; 37 Cyc. 408, 409, Notes 69, 76 and 77; 25 R. C. L., p. 1318, §6. The general rule is stated in Sheldon on Subrogation (2nd Ed.) § 127 as follows:

"The right of subrogation does not arise in favor of a surety until he has actually paid the debt for which he is liable as surety; the right does not accrue upon a partial payment by the surety, until the creditor is wholly satisfied. Even if a surety is liable only for a part of the debt, and pays that part for which he is liable, he cannot be subrogated to the securities held by the creditor until the whole demand of the creditor is satisfied."

Appellee insists that the above cited authorities have no application here, claiming that its rights do not rest upon "legal subrogation" but upon an express assignment of part of appellant's demand, i. e., "conventional subrogation." In support of its contention, appellee cites the case of *Morrow* v. *U. S. Mortgage Co., supra,*

upon which case it places considerable reliance. In that case, which involved subrogation to a mortgage lien, there was an express agreement that the appellant therein (who was to become the owner of certain notes) "was to hold them in the same manner as that in which the company had theretofore held them, that is to say, as a prior lien under the mortgage." The court, speaking through Niblack, J., said: "That amounted, in legal effect, to a waiver on the part of the company of its right to insist upon a postponement of Morrow's claim for reimbursement until the remainder of the mortgage debt was satisfied, as it might have done in the absence of such an agreement. . . . In its substantial import it was nothing more than an agreement that the doctrine of subrogation should be modified in one respect in its application to the notes in the hands of Morrow."

We do not question the correctness of the holding in the Morrow case, but we think the facts in the instant case warrant a different conclusion. In the Morrow case, *supra,* the agreement gave Morrow the right to hold the notes in the *same manner* as that in which the company theretofore held them, i. e., as a prior and subsisting lien enforceable against the mortgaged property by appropriate foreclosure proceedings. The court said that such action amounted in legal effect to a waiver on the part of the company of its right to insist upon a postponement of Morrow's claim for reimbursement until the remainder of the mortgage debt was satisfied. In the instant case the agreement executed by appellant was no more than the bond called for, to wit, all necessary assignments to enable the surety to collect such dividends from the assets of the principal to which they may be legally entitled due to performance of their obligation. The instrument is absolutely silent as to the time participation shall begin, and we think it is quite apparent that it was executed

in accordance with the terms of the bond, the bond being expressly referred to. It is a well settled rule that contracts are to be construed with reference to all parts and surrounding circumstances to ascertain the intent of the parties. It is our conclusion that we must therefore invoke the rule of *strictissimi juris* as regards the agreement of subrogation herein, and we hold that it did not confer the right to a *pro tanto* subrogation.

In Ruling Case Law, Vol. 25, §6, it is said: "There is authority for the rule that where the right of subrogation is the result of an express agreement, a partial payment may be considered as affecting a *pro tanto* assignment of the creditor's security, but where the claim to a *pro tanto* subrogation is based on a contract, before a court will permit subrogation that would be to the detriment of the obligee *the contract should be so certain as to admit of no doubt on that question.*" (Our italics.)

We recognize the rule that where the right of subrogation is the result of an express agreement, it is no objection that it extends only to a part of the debt owing, but the agreement must be clear and unequivocal. In the case of *Md. Casualty Co.* v. *Cleveland, etc., Ry. Co.* (1919), 74 Ind. App. 272, 124 N. E. 774, 775, the court laid down the general rule that the right to subrogation did not exist unless the whole debt involved had been paid, and held that "this rule applies to *conventional* as well as legal subrogation, *unless the contract by which such right is created provides otherwise.*"

The case of *Knaff* v. *Knoxville Banking & Trust Co., supra,* has been very helpful and instructive in that it is similar in many respects to the case at bar, with the exception that there was no separate agreement for subrogation therein, an agreement for conventional subrogation being incorporated into

the bond. We quote with approval the language of Fancher, J., as it expresses our thoughts precisely. "We are of the opinion that this contractual subrogation is nothing more than the usual equitable right which the surety would have without stipulation. Before the court would permit a subrogation in favor of a surety that would be to the detriment of the obligee in the bond, the contract should be so certain as to admit of no doubt on that question. In the present case the main object of the bond was to secure and save harmless the City of Knoxville on all deposits it might make in the Knoxville Banking & Trust Company. We see no provision in the contract for a subrogation inconsistent with that purpose. The subrogation mentioned in the bond to be forthwith made in case of default and payment of a claim thereunder did not contemplate a subrogation which would lessen the recovery of the city, but only a subrogation in harmony with the purpose of the bond, which must have been upon such payment and under such conditions as would preserve all the rights to the city to receive its full debt. In other words, the subrogation not being stated otherwise, must be considered as in harmony with the obligation to well and truly keep all sums of money deposited by the city and pay over the same and each and every part thereof."

In view of the above it is our holding that the agreement executed by appellant was not a sufficient assignment of its rights as a creditor of the State Bank of Westfield so as to enable appellee to share pro rata with appellant in distributive dividends on the basis of the respective amounts owing them.

The judgment of the Hamilton Circuit Court is therefore reversed, with instructions that appellant's motion for a new trial be granted, and for further proceedings in conformity with this opinion.