ELLIS *v.* THOMPSON ET AL.

[No. 15,855. Filed May 26, 1937. Rehearing denied October 15, 1937. Transfer denied December 21, 1937.]

*Coburn T. Scholl, George R. Jeffrey* and *Edwin Steers,* for appellant.

*William H. Wemmer* and *Louis S. Binkley,* for appellees.

KIME, J.—The Ellis Realty Company, an Indiana corporation, as owner of an apartment house, Charles H. Ellis and John R. Curry as guarantors, and Bankers Trust Company, purchaser of the entire issue of preferred stock, as trustee, entered into a contract on January 31, 1925, in reference to the preferred stock of the corporation. On the same day appellant executed a personal guaranty in reference to said preferred stock, a part of which guaranty reads as follows: "FOR VALUE RECEIVED, and in consideration of the Bankers Trust Company, of Indianapolis, Indiana, as Trustee, having purchased the entire preferred stock issue of $90,000.00 of the Ellis Realty Company, of Indianapolis, Indiana, redeemable as in certificates therefor provided, *I hereby personally guarantee the payment of the dividends of said entire issue* from date of issue of February 15, 1925, to November 15, 1935, inclusive, *and also personally guarantee the redemptions of principal of said issue during said period* as provided in said certificates."

Because it was necessary to make repairs to the apartment building and there was no money available therefor and in order to permit the realty company to make

such repairs and improvements, to assure the payment of reasonable dividends upon its outstanding preferred stock, and for the purpose of amicably reorganizing said company in order to eliminate the possibility of receivership and consequent expenses an agreement was entered into on May 31, 1931, between Ellis Realty Company, the common stockholders of said company, and the Bankers Trust Company, Trustee, which agreement contained the following:

"Since two hundred thirty (230) shares of the 900 original shares of preferred stock of the Company have been redeemed and cancelled in part from funds advanced personally by Charles H. Ellis, the personal guaranty of the payment of dividends and the redemption of principal of company's preferred stock by said Ellis, shall for all purposes be considered fully performed and by these presents the said Charles H. Ellis is hereby released from any further liability in respect to said guaranty."

Reorganization was had in May, 1931.

Ellis, on April 21, 1936, filed his verified claim, which was amended June 12, 1936, with the receiver of the Ellis Realty Company. The claim alleged that at various times from November 15, 1926, to and including November 15, 1930, claimant paid to the realty company, under his guaranty, $15,000.00; that on May 5, 1931, a contract was entered into between the realty company, the common stockholders, and the Bankers Trust Company, Trustee; that by the terms of said contract the corporation was reorganized and the payments totaling the above sum made personally by said claimant under the terms of his guaranty were acknowledged and the written contract of January 31, 1925, was specifically modified and made a part of the contract of May 5, 1931; that by reason of the payments made by claimant, under the terms of said guaranty he was "subrogated to all the rights of the preferred stockholders . . . whose

stock was so redeemed and cancelled and dividends so paid. Interest was claimed on the amount above set out at $6,225.00, making the total amount of the claim $21,225.00.

The receiver filed a written recommendation that this claim be disallowed for three reasons: (1) that claimant advanced the money as owner of the common stock of the corporation and as such was merely a payment to the surplus and capital; (2) that such contributions were made at the time when there was outstanding claimant's written guaranty, guaranteeing the payment of dividends and retirement of preferred stock; that said contributions were necessary to meet dividends and retirements upon preferred stock; that claimant is not entitled to be subrogated to the right of holders of preferred stock whose stock was retired by means of such advancements; that if subrogation were allowed it would work to the detriment of the preferred stockholders whose stock had not been retired and would be contrary to the terms of said written contract; (3) that all sums so contributed were contributed prior to May 5, 1931, the date of the contract of reorganization; that claimant did not at any time thereafter until the filing of this claim, claim any sums due him from the reorganized company; that under the original articles of incorporation and the terms of the preferred stock issued thereunder said Ellis Realty Company could not incur any indebtedness in excess of $2,500.00 so long as any preferred stock remained outstanding; that Ellis as one of the original incorporators of the realty company and the owner of the common stock thereof had actual knowledge of such provision and with such knowledge of such provision and with such knowledge voluntarily contributed the amounts shown by this claim.

At the trial it was stipulated that the sums set out in the amended complaint were used to pay dividends

and meet retirements of preferred stock to that extent; that upon the retirement of preferred stock of the realty company with the money paid in by claimant the shares so retired were cancelled by the Realty Company through its officers.

The court disallowed the claim and judgment was entered accordingly thereon after claimant's motion for new trial, containing the properly assigned grounds that the decision of the court was not sustained by sufficient evidence and that it was contrary to law, was overruled.

Appellant first contends that having made a *"prima facie"* case he was entitled to recover in the absence of any evidence having been introduced by the appellees. The record discloses stipulations as to certain basic facts and the introduction of a large amount of written evidence in addition to testimony of Mr. Ellis. The fact that most of the exhibits were introduced by appellant is immaterial as it is a well established principle of law that all relevant evidence introduced in the trial court must be considered regardless who introduced it. The court, in *Inland Steel Co.* v. *Ilko* (1913), 181 Ind. 72, 76, 103 N. E. 7, said: "If, however, a fact in issue is established by competent relevant evidence, it matters not which party introduced it, or what other purpose he had in view in offering it." In *Old Colony Ins. Co.* v. *Kolmer* (1922), 78 Ind. App. 479, 481, 136 N. E. 51, the court said: "The only evidence submitted on the trial was an agreed statement of facts, but notwithstanding its form we must sustain the decision on which the judgment is based, if such facts, or any inference reasonably deducible therefrom, tend fairly to support the same." Merely because evidence has been introduced by plaintiff to establish the case alleged in his complaint and there has been no evidence specifically introduced by the defendant rebutting plain-

tiff's evidence it does not logically or necessarily follow that upon his evidence the plaintiff should prevail unless the law shows a legal liability thereunder on the part of the defendant.

Appellant next contends that inasmuch as the preferred stockholders of the realty company were entitled to enforce the redemption of their stock at maturity that when appellant was compelled, by the terms of his guaranty, to provide the money to redeem the preferred stock, he became subrogated to all the rights of the preferred stockholders, and was entitled by operation of law to the return of his money by enforcing their rights. Under the contract of guaranty signed by appellant he paid certain amounts to the realty company. A stipulation at the trial disclosed that all the funds so paid by Ellis "was used to pay dividends and meet retirements of preferred stock to that extent" and there is nothing to show how much was used for each. The contract for reorganization of the realty company contained the release of guaranty hereinabove set out. Nowhere in the record is it disclosed that at the time appellant made the payments, or at the time of the reorganization which took place in May, 1931, or at any time thereafter until the filing of his claim did appellant allege or claim any money due him by virtue of said advancements or otherwise nor is there any showing that in the reorganization the sums so paid were recognized as a debt owing to appellant by the realty company.

At the time of the reorganization Ellis' guaranty was only partially carried out and remained in that condition at the time of trial. The record shows that there still remained outstanding and unredeemed at the date of reorganization 650 shares of preferred stock, a part of which, if not all, is still outstanding. It is a well estab-

lished rule that a court will not apply the doctrine of subrogation unless the obligation has been met in full.

In *Washington Twp. Bd., etc.* v. *American Surety Co.* (1932), 97 Ind. App. 45, 49, 183 N. E. 492, this court said: "The decisions of the courts of this country and of the various text writers are almost unanimous in holding that a surety has no right of subrogation until the claim upon which he is surety has been paid *in full* or otherwise entirely satisfied. This principle applies not only to cases where the surety's liability is limited in amount, but to cases where there is no such limit." (citing cases) and then quoted from Sheldon on Subrogation (2d) §127, as follows: "The right of subrogation does not arise in favor of a surety until he has actually paid the debt for which he is liable as surety; the right does not accrue upon a partial payment by the surety, until the creditor is wholly satisfied. Even if a surety is liable only for a part of the debt, and pays that part for which he is liable, *he can not be subrogated to the securities held by the creditor until the whole demand of the creditors is satisfied.*" (Our italics.) We are aware of the fact that a preferred stockholder is not a creditor in the generally accepted meaning of that word, however, here under the guaranty, which is shown to be for the benefit of the preferred stockholders, he must be regarded as occupying the same relative position.

Ellis is insisting that he is entitled to share *pro rata* with the holders of the preferred stock outstanding. What is due those preferred stockholders by the realty company is a liability thereof, and that liability had been guaranteed by Ellis and regardless whether it is called a debt, obligation, or liability, or whether the preferred stockholders are called stockholders, instead of creditors, is immaterial. The liability in favor of the preferred stockholders is there. Ellis had guaranteed

the liability and he can not in equity be allowed to compete or be on a parity with preferred stockholders until their claims have been paid in full.

Ellis was obliged to pay all dividends on and redeem all the preferred stock of the realty company and even though he was only compelled to carry out part of it (that is, that part paid by him to the time of the release in the contract of reorganization) *he is not entitled to subrogation until the whole obligation is met, which would be when the entire balance of preferred stock outstanding has been either redeemed by the corporation or in some other manner entirely satisfied. Pou et al.* v. *South Caroline Warehousing Corporation* (1916), 27 F. (2d) 418; *Knaffl* v. *Knoxville Banking & Trust Co.* (1916), 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C 1181.

All of the preferred stock issued must be regarded as a single obligation regardless of the number of holders thereof. It makes no difference whether appellant's guaranty applied only to the shares retired and dividends paid from the year 1926 to 1930, inclusive, or whether it applied to the entire outstanding issue of preferred stock, he cannot claim on a parity with preferred stockholders until all of the obligation to such stockholders, as such, has been met in full. The assets of the corporation are now insufficient to pay the preferred stock outstanding. Ellis proposes to take the amount of his partial performance under his guaranty and present the same as a claim against the assets of the corporation, thereby further reducing the value of the preferred stock outstanding. We do not think this should be permitted. *Pou et al.* v. *South Carolina Warehousing Co., supra; Knaffl* v. *Knoxville Banking, etc., supra.*

The record discloses that when preferred stock was redeemed by the realty company it was "cancelled."

There is nothing to show that it or any of it was transferred to appellant. When the company was reorganized the release specifically said that "Since 230 shares of the 900 original shares of preferred stock of the company have been redeemed and cancelled . . ." Ellis was released from any further necessity of meeting the guaranty's terms. The remaining preferred stockholders were justified in assuming that the only preferred stock to be considered in the future was the stock held by them and since the trial court by its judgment placed that construction thereon we approve such construction, as it is reasonable and logical. And such stockholders were further justified in so believing inasmuch as Ellis asserted no claim at the time of reorganization.

Appellant insists that because of the release his personal obligation was fully paid and, therefore, as to the preferred stock so redeemed prior to reorganization he was subrogated. Assuming but not deciding that Ellis was subrogated to the rights of the preferred stockholders whose stock was so redeemed prior to the reorganization, any rights that such stockholders may have had ceased to exist and never became a lien or charge on the assets of the new corporation, either by law or contract.

No reversible error having been shown, the judgment of the Marion Superior Court is in all things affirmed.