299 F.2d 696
 93 A.L.R.2d 1340
 Nathan HAUSMAN, in His Own Behalf as a Stockholder of
Defendant Pantepec Oil Company, C.A., and in Behalf of All
Other Such Stockholders Similarly Situated,
Plaintiff-Appellant, and Joseph Applebaum, The Applebaum
Foundation, Inc., Alfred N. Barnett, Julie A. Buckley, as
remaining trustee u/w of Daniel Buckley, deceased, Peter
Fundaro, Harold Maltz, Norvin H. Rieser, Fred Weibert and
Regina Weibert and L. H. Luckett, Intervenor-Plaintiffs-Appellants,
v.
John W. BUCKLEY, The Catawba Corporation and Pantepec Oil
Company, C.A., Defendants-Appellees, and John S. Bailey,
Eduardo Lopez de Ceballos, George S.Montgomery, Jr., Jose
Melich Orsini, Santiago Segovia, John T. Sinclair, Jr., Guy
K. Stewart,R. Ramirez U., Cecilio Velasco, G. J. Van
Wageningen, Phillips PetroleumCompany, Defendants.
 No. 174, Docket 27144.
 United States Court of Appeals Second Circuit.
 Argued Jan. 3, 1962.
Decided Feb. 13, 1962, Certiorari Denied May 21, 1962, See
82 S.Ct. 1157.
 
 Robert B. Block, New York City, of counsel (Heffner, Block & Block, Sonnenschein & Sherman, Murray W. Greif, New York City), for appellants.
 Thomas W. Hill, Jr., New York City (Spear & Hill, New York City), for John W. Buckley and The Catawba Corporation.
 Joseph A. McManus, New York City (Coudert Brothers, New York City), for Pantepec Oil Company, C.A.
 Before WATERMAN, KAUFMAN and MARSHALL, Circuit Judges.
 KAUFMAN, Circuit Judge.
 
 
 1
 This is a stockholders' derivative action brought on behalf of the Pantepec Oil Company, C.A. (Pantepec), a corporation organized under the laws of Venezuela. Jurisdiction is based on diversity of citizenship, 2, U.S.C. 1332.
 
 
 2
 In the stage of this protracted litigation[1] which concerns us on this appeal, the third amended complaint contained three counts:
 
 
 3
 (1) Count 1 alleged that a certain contract between Pantepec and defendant Phillips Petroleum Company (Phillips) constituted an unlawful sale of Pantepec's assets under Venezuelan law. It demanded rescission and damages;
 
 
 4
 (2) Count 2 charged the individual defendants, officers and directors of Pantepec,[2] with responsibility for the Phillips contract, and sought damages for a breach of fiduciary duty to the corporation;
 
 
 5
 (3) Count 3 alleged that individual defendant Buckley, and a company dominated by him, The Catawba Corporation (Catawba), caused Pantepec to enter into an unlawful management services contract with Catawba; it demanded cancellation of that agreement, and damages for corporate waste.
 
 
 6
 On November 24, 1959, Judge MacMahon[3] denied a motion made by the plaintiffs pursuant to Rule 12(f), Fed.R.Civ.P., 28 U.S.C. to strike from the answers of Pantepec, Buckley, and Catawba, defenses alleging lack of jurisdiction over Pantepec's person. Subsequently, the defendants moved for a separate and prior trial[4] of another defense which challenged the right of the plaintiffs, under Venezuelan law, to maintain an action on behalf of Pantepec. This motion was granted. Judge MacMahon agreed with the defendants' assertion that Venezuelan law, applicable under controlling New York conflict of laws principles, would determine the right of the plaintiffs to enforce a corporate claim; and that the content of this foreign law raised a question of 'fact' which should be resolved before further proceedings on the merits of the issues raised by the complaint.
 
 
 7
 However, on April 17, 1961, the day set for the separate trial on the question of Venezuelan law, the plaintiffs moved, pursuant to Rules 12(f) and (h), Fed.R.Civ.P., to strike the defenses of Buckley, Catawba, and Phillips which contested their right to bring the action; and for the same purpose, moved to strike Pantepec's answer and an appearance entered on its behalf by certain attorneys. These motions were promptly denied, and the preliminary trial was held before Judge MacMahon, sitting without a jury.
 
 
 8
 On June 8, 1961, Judge MacMahn filed his findings of fact and conclusions of law. He held: (a) that Venezuelan law governed the merits of plaintiffs' claims; (b) that under Venezuelan law the complaint failed to state a claim entitling plaintiffs to relief on the first count (against Phillips); and (c) that under this law plaintiffs had no right to maintain an action in behalf of Pantepec on the remaining counts.[5] Judgment for defendants was entered accordingly on June 29, 1961.
 
 
 9
 Plaintiffs appeal from so much of this judgment dismissing counts 2 and 3 of their complaint on the grounds that they had no right to maintain an action on behalf of Pantepec, and also ask review of interlocutory orders entered November 24, 1959 and April 17, 1961, denying their motions to strike certain defenses in Pantepec's answer and the appearance of certain attorneys on its behalf.
 
 
 10
 We hold that no error was committed by the trial court below, and that the judgment for defendants must be affirmed.
 
 A.
 
 11
 Appellants' first contention is that their various motions were improperly denied. However, insofar as the 24, 1959 is concerned, it is unnecessary to determine if there was any error. Although the motion was unsuccessful in its attempt to strike defenses which contested the court's jurisdiction over the person of Pantepec, Judge MacMahon subsequently held that the court had jurisdiction over all the parties. Thus, the question raised by his denial of the motion is rendered moot.
 
 
 12
 On the other hand, the trial court's denial of appellants' motions to strike (a) Pantepec's answer, (b) the appearance on its behalf of certain attorneys, and (c) defenses raised by Buckley, Catawba, and Phillips, requires discussion. By these motions appellants sought to prevent the defendants from contesting their right to bring the instant action on behalf of Pantepec.
 
 
 13
 The first two motions, (a) and (b), are based on the allegation that Pantepec was deprived of the benefit of independent counsel because its attorneys, until September 29, 1960, also represented the adversary defendant Buckley. Appellants contend that as a consequence, the answer to the third amended complaint (filed on September 18, 1959) which raises the defense challenging their right to bring this action, does not necessarily represent the position which Pantepec might have taken on this issue if it had availed itself of other legal counsel. In support of their argument that Pantepec may have suffered from the 'conflicting' interests of counsel, appellants bring to our attention Opinion No. 842, Committee on Professional Ethics, of the Association of the Bar of the City of New York (January 4, 1960). In that Opinion, a majority of the Committee decided that an attorney's representation of both the corporation and adversary defendants in stockholders' derivative actions may be unethical. Putting aside the question as to whether such a ruling by a Committee of a Bar Association would warrant striking an answer and defenses for a violation of ethical standards, we believe that the trial court did not commit error in denying the motion to strike Pantepec's answer and the appearance of its attorneys. Appellants' reliance on Opinion 842, supra, is misplaced. That Opinion, as we read it, did not proscribe dual representation in all cases, but stated that the propriety of such conduct 'must be determined in the light of the particular facts attending each such case.'
 
 
 14
 Here the corporation was represented by the same attorneys who represented its directors during part of the preliminary stages of the litigation. It was during this period that Pantepec raised the defense which challenged the right of stockholders to sue on its behalf. Was this defense necessarily in the best interest only of the directors, as appellants seem to suggest? We think not. Assuming that the allegations of the complaint may have had some merit, the corporation nevertheless, had a legitimate interest in protecting the right of the stockholders' meeting to bring an action on its behalf, if it were to be brought at all. As we will discuss at greater length in connection with other issues raised by the appeal,[6] under Venezuelan law, enforcement of a corporation's claims depends not merely upon their merit but upon a decision of the stockholders' meeting that they ought to be enforced.
 
 
 15
 This legitimate interest in bringing the action to a halt before the merits of the allegations are considered exist even though we may assume that an adversary defendant, represented by the same counsel, would have a different interest in seeing the litigation ended. Therefore, it is not necessarily true that Pantepec was deprived of the advice of disinterested counsel, and that it would have conducted itself differently if it were represented by another attorney. Under these circumstances, viewing the matter after a judgment has been rendered as we must, we are unable to conclude that denial of the motion to strike the defense was error. Cf. Otis & Co. v. Penn. R.R. Co., 57 F.Supp. 680 (E.D.Pa.1944) (Kalodner, J.); Kelley v. 74 & 76 West Tremont Avenue Corp., 24 Misc.2d 370, 198 N.Y.S.2d 721 (Sup.Ct.1960); Garlen v. Green Mansions, Inc., 9 A.D.2d 760, 193 N.Y.S.2d 116 (1st Dept. 1959).
 
 
 16
 We note, however, that this decision is limited to the facts before us, and should not be construed as voicing disagreement with Opinion 842.
 
 
 17
 Inasmuch as we conclude that the denial of the motion directed to Pantepec's answer was correct, it would serve no purpose to consider whether the other defendants were also entitled to raise the same defense; and we shall proceed to examine the principal issue raised by this appeal, the applicability of Venezuelan law.
 
 B.
 
 18
 Since this is a diversity action, we must apply the conflict of laws principles of New York (the forum state) in order to determine whether Judge MacMahon's reference to Venezuelan law was correct. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Rand v. Underwriters at Lloyd's, 295 F.2d 342, 345 (2nd Cir. 1961); Hertz v. Graham, 292 F.2d 443, 448 (2nd Cir. 1961); Royce Chemical Co. v. Sharples Corp., 285 F.2d 183, 186 (2nd Cir. 1960); Ricciuit v. Voltarc Tubes, Inc., 277 F.2d 809, 810 (2nd Cir. 1960).
 
 
 19
 The specific issue with which we are concerned, pertains to the right of a stockholder of a foreign corporation to participate in its management, i.e., to bring a lawsuit on the corporation's behalf. The trial court was of the opinion that the courts of New York would characterize this as a 'substantive' issue which related to the administration of the internal affairs of a foreign corporation, and that these courts would not view it as a mere question of 'procedure.' Consequently, Judge MacMahon held that New York conflict of laws principles, embracing the so-called 'internal affairs' choice-of-law doctrine, would require him to refer to the law of Pantepec's place of incorporation (domicile), which is Venezuela.
 
 Substance v. Procedure
 
 20
 At the outset, appellants contend that the trial court erred in its assumption that the New York courts would have considered this issue 'substantive' rather than 'procedural.' As they view the matter, 'the substance is the corporation claim, by whoever and however asserted. The 'who' and the 'how' are merely mechanics, procedure or remedy' (Appellants' Brief, p. 26). In New York procedural questions are always governed by the law of the forum. Kilberg v. Northeast Airlines, 9 N.Y.2d 24, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961). Therefore, appellants conclude it was unnecessary and incorrect to apply choice-of-law rules. We disagree.
 
 
 21
 It is essential to remember that, above all, we are dealing with a question of conflict of laws policy.
 
 
 22
 'The words 'substantive' and 'procedural' or 'remedial' are not talismanic. Merely calling a legal question by one or the other does not resolve it otherwise than as a purely authoritarian performance.' Guaranty Trust Co. of New York v. York, 326 U.S. 99, 115, 65 S.Ct. 1464, 1473, 89 L.Ed. 2079 (1945) (dissent).
 
 
 23
 Our real inquiry must be directed to the question whether appellants' right to bring this action involves no more than compliance with procedural requirements extraneous to the substance of their claim, or whether it concerns the very nature and quality of their substantive right, powers and privileges as stockholders of a Venezuelan corporation. Thus defined, we think it is clear that appellants' position cannot prevail. A rule which provides that the enforcement of corporation claims through derivative actions must be undertaken pursuant to the will of a majority of its stockholders reflects a deliberate policy that such actions ought to be brought not only when the claims may have merit but when the stockholders, as a body, are of the opinion that the corporate welfare is best promoted by suing upon them.[7] The issue is not just 'who' mau maintain an action or 'how' it will be brought, but 'if' it will be brought.
 
 
 24
 We think the situation analogous to the problems raised by statutes of limitation. Ordinarily, for conflict of laws purposes, the statute of limitation of the forum controls. Restatement, Conflict of Laws, 603, 604 (1934).
 
 
 25
 'But a statute of the place where the right arose may impose upon it a condition which goes to its substance, and, when this is so, the condition will be observed elsewhere. This has ordinarily come up in the case of statutory rights in which the limitation was imposed by the same statute which created the right itself. * * * But it is not necessary that the limitation should be in the same statute, so the purpose be plain to make it a condition.' Wood & Selick, Inc. v. Compagnie Generale Gransatlantique, 43 F.2d 941, 942-943 (C.C.A.2, 1930) (L. Hand, J.).
 
 
 26
 See Bournias v. Atlantic Maritime Co., 220 F.2d 152 (2nd Cir. 1955); Restatement, supra, 605. In the present case we hold that the condition imposed by Venezulan law on the right to enforce corporate claims goes to the substance of that right, and cannot be treated as dealing with the mere procedure by which the claims are enforced. Compare Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 556, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) in which, for Erie doctrine purposes, it was held that a statute requiring security for expenses of stockholder litigation 'so conditions the stockholder's action' that it cannot be disregarded as 'a mere procedural device.'
 
 
 27
 This approach to the problem is consistent with the law of New York, which recognizes that 'remedial and substantial 'shade into each other constantly' and 'the law of the forum normally determines for itself' whether a given question is one of substance or procedure.' Kilberg v. Northeast Airlines, supra, 211 N.Y.S.2d at p. 137, 172 N.E.2d at p. 529. In Coster v. Coster, 289 N.Y. 438, 46 N.E.2d 509, 146 A.L.R. 702 (1943) the Court of Appeals held that a wife's right to sue her husband for personal injuries sustained in Massachusetts (and before her marriage) was a part of her substantive claim, and not a mere matter of remedy. Therefore, Massachusetts law, denying her the right to sue, was applied. Cf. Newman v. Baldwin, 13 Misc.2d 897, 179 N.Y.S.2d 19 (Sup.Ct.1958) (necesity of demand on stockholders preliminary to bringing derivative action treated as substantive and choice-of-law rules applied); Milvy v. Adams, 16 F.R.D. 105 (S.D.N.Y.), remanded,217 F.2d 647 (2nd Cir. 1954); Bankers Nat. Corp. v. Barr, 7 F.R.D. 305 (S.D.N.Y.1945).
 
 
 28
 Cases cited by appellants suggesting that insofar as the defendants in a stockholders' derivative action are concerned, the question of 'who' brings the action is merely collateral to the substance of the claims being prosecuted, are not relevant to the conflict of laws problems.[8] As Justice Frankfurter has said, the terms 'substance' and 'procedure' are
 
 
 29
 'the same dey-words to very different problems. Neither 'substance' nor 'procedure' represents the same invariants. Each implies different variables depending upon the particular ticular problem for which it is used.' Guaranty Trust Co. of New York v. York, supra, 326 U.S. at p. 108, 65 S.Ct. at p. 1469.
 
 
 30
 Since the trial court correctly regarded the issue of appellants' right to bring the action as being 'substantive,' we must examine its determination of the applicable choice-of-law rule.
 
 Internal Affairs Rule
 
 31
 The 'internal affairs' choice-of-law rule, as applied to issues peculiar to disputes involving corporations, is well established and generally followed throughout this country. See Reese and Kaufman, The Law Governing Corporate Affairs: Choice of Law and the Impact of Full Faith and Credit, 58 Colum.L.Rev. 1118, 1125 (1958). Insofar as it pertains to the issue under consideration, it has been summarized as follows:
 
 
 32
 'The right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation. This includes acts that are beyond the purposes of the corporation, acts which are prohibited either by the state of incorporation or by the state where the acts are to be performed and acts which are alleged to be beyond the authority of the officers or directors * * *' Restatement, Conflict of Laws, 183, comment b (1934).
 
 
 33
 See also Ehrenzweig, Conflict of Laws, Part One, . 40-41 (1959).[9]
 
 
 34
 We agree with Judge MacMahon that the courts of New York also adhere to the 'interanl affairs' rule. Newman v. Baldwin, supra, held that the law of the state of incorporation determined whether a demand for relief must be made upon a corporation's stockholders as a body before a derivative action could be brought.[10] This decision, which dealt with a problem closely analogous to the present one, relied upon the provision and comment of the Restatment noted above. In addition, it cited Russian Reinsurance Co. v. Stoddard, 240 N.Y. 149, 147 N.E. 703 (1925) in which the Court of Appeals stated:
 
 
 35
 'If the existence of the (foreign) corporation, its capacity to sue, or the authority of its directors to represent it or to bring the action is challenged, we look to the charter and the law of its corporate domicile for the data upon which we may rest our determination of such questions. * * *' 240 N.Y. 154, 147 N.E. 704.
 
 
 36
 Cf. Long Park, Inc. v. Trenton-New Brunswick Theatres Co., 297 N.Y.174, 182, 77 N.E.2d 633, 636 (1948) (Fuld, J., dissenting); German-American Coffee Co. v. Diehl (No. 1), 216 N.Y. 57, 109 N.E. 875 (1915); Vanderpoel v. Gorman, 140 N.Y. 563, 35 N.E. 932, 24 L.R.A. 548 (1894); see also Matter of American Fibre Chair Seat Corp., 265 N.Y. 416, 420, 193 N.E. 253, 255 (1934): 'The stockholders of a corporation may be the real owners of the corporation, but their right to control the corporation is governed by the law of its creation' (Lehman, J.).
 
 
 37
 Moreover, the 'internal affairs' rule has been applied repeatedly in order to determine the fiduciary duty of a foreign corporation's directors. Upson v. Otis, 155 F.2d 606, 610 (C.C.A.2, 1946); Stratton v. Bertles, 238 App.Div. 87, 263 N.Y.S. 466 (1933); Diamond v. Daivs, 38 N.Y.S.2d 103 (Sup.Ct.1942); German-American Coffee Co. v. Diehl (No. 2), 86 Misc. 547, 149 N.Y.S. 413 (Sup.Ct.1914), aff'd per curiam 168 App.Div. 913, 152 N.Y.S. 1113 (1915); Fayes, Inc. v. Kline, 136 F.Supp. 871, 872 (S.D.N.Y.1955); and reference has been made to the law of the state of incorporation in order to resolve problems concerning one's status as a stockholder, Milvy v. Adams, supra; Bankers Nat. Corp. v. Barr, supra; but see Hirshhorn v. Hirshhorn, 280 App.Div. 791, 112 N.Y.S.2d 841 (2nd Dept. 1952). In addition, New York courts for many years have dismissed a variety of actions on grounds of forum non conveniens, in part because of the desirability of having foreign courts apply their own law to disputes involving corporations domiciled in their jurisdictions. See Langfelder v. Universal Laboratories, Inc., 293 N.Y. 200, 56 N.E.2d 550, 155 A.L.R. 1226 (1944); Sternfeld v. Toxaway Tanning Co., 290 N.Y. 294, 49 N.E.2d 145 (1943); Novich v. Rojtman 5 Misc.2d 1029, 161 N.Y.S.2d 817 (Sup.Ct.1957). Compare Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).
 
 
 38
 Even if we were to assume, as appellants suggest, that these cases do not conclusively demonstrate that New York courts would apply the 'internal affairs' rule in the present case, it would still be necessary for this Court, absent state authority directly in point, to forecast what rule they would follow in this instance. Hablas v. Armour & Co., 270 F.2d 71, 75-76 (8th Cir. 1959); Yost v. Morrow, 262 F.2d 826, 828 (9th Cir. 1959); Steinberg v. Hardy, 90 F.Supp. 167, 169 (D.Conn.1950). In view of the well established law illustrated by the cited cases and the widespread use of the 'internal affairs' rule elsewhere,[11] we believe the New York courts would adopt that rule, if they have not already done so.
 
 Rule of Auten v. Auten
 
 39
 Appellants also maintain that the cases in which 'internal affairs' rule has been applied demonstrate only what the New York law was-- and not what it is, or should be. They argue that in New York, 'rigid' choice-of-law rules such as this have given way to a 'flexible' formula variously described in terms of 'grouping of contacts' or the finding of a 'center of gravity,' as enunciated in Auten v. Auten, 308 N.Y. 155, 159-161, 124 N.E.2d 99, 101-102, 50 A.L.R.2d 246 (1954). This Court readily agrees that the Auten case has substantially changed the manner in which New York courts decide which law 'governs' multistate contracts. Although it is less clear, it would appear that something in the nature of the Auten rule may also have been applied in tort cases. See Kilberg v. Northeast Airlines, supra. But we are unable to ascertain any authority which even remotely substantiates appellants' assertion that, 'The center of gravity doctrine is encroaching on and superseding traditional conflict of laws rules in all areas of litigation' (Appellants' Brief, p. 32).
 
 
 40
 Appellants have brought to our attention a number of cases in which this Court, in order to resolve 'commercial' controversies,[12] referred to the Auten rule. But all of these cases involved questions concerning the law governing contracts or liability for torts. None of them directly or indirectly suggests that this Court was of the opinion that New York tribunals have introduced the Auten rule into corporate stockholder litigation. And appellants have not cited any decisions by New York courts in which this has been done.[13] We do not wish to be understood as intimating in any way that the Auten rule could or could not be applied profitably to some corporate questions. Nor do we pass judgment upon the relative merits of the 'internal affairs' doctrine, vis-a-vis the Auten rule except to note our disagreement with appellants' suggestion that the 'internal affairs' doctrine has no application to the branch of the law with which we are dealing, or that it clearly serves no useful purpose at all. We think it is generally agreed that, in fact, 'the values of predictability and ease of application are best served by this rule.' Reese and Kaufman, supra, at p. 1144.[14]
 
 
 41
 In any event, the proper function of this court is to ascertain what New York law is, and not to speculate about what it will be, or in Learned Hand's felicitous phrase, 'to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant.' Spector Motor Service v. Walsh, 139 F.2d 809, 823 (2nd Cir. 1943) (dissent), vacated 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). It is certainly not our function to apply the rule we think better or wiser. Klaxon Co. v. Stentor Electric Mfg. Co., supra, 313 U.S. at p. 497, 61 S.Ct. 1020, 85 L.Ed. 1477. If we were to apply the Auten rule as appellants ask, we would be formulating the legal policy and mind of the state in an area where there would appear to be a clearly enunciated state rule. Yoder v. Nu-Enamel Corp., 117 F.2d 488, 489 (8th Cir. 1941).
 
 Public Policy
 
 42
 Finally, appellants contend that even if New York courts adhere to the 'internal affairs' rule generally, they would refuse to apply it in this particular case for reasons of 'public policy.' The crux of this argument is that New York courts, which allow minority stockholder actions, would not defer to the policy of Venezuela (the corporation's domicile), which, in effect, allows only majority stockholder actions. But the courts of New York, as Judge Cardozo instructs,
 
 
 43
 'are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.' Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198, 202 (1918).
 
 
 44
 Appellants have not brought to our attention any case in which a New York courts, in the absence of statutory direction, has held that a foreign statute governing the relations of stockholders inter sese in a corporation chartered in its jurisdiction 'outrages the public policy of New York,' Loucks v. Standard Oil Co., supra, at p. 111, 120 N.E. at p. 202, and therefore cannot support a defense in an action otherwise based on that foreign law. Moreover, we are not persuaded that the Venezuelan law under consideration is 'immoral' or 'fundamentally unjust'[15] or that it contravenes any New York policy involving the right of stockholders to participate in the management of a corporation through the intervention of the courts.
 
 
 45
 The laws of both Venezuela and New York vest primary control of corporate affairs in the directors; create a fiduciary duty running from the directors to the corporation; and permit the stockholders to recover damages (for the corporation) for breach of that duty through resort to the courts. To be sure, access to the courts for this purpose is not unconditional in Venezuela;[16] but this is also true in New York. For example, the right of a samll minority stockholder to bring suit in New York is substantially affected by a law requiring security for expenses of the litigation. N.Y. General Corp.Law, McKinney's Consol.Laws, c. 23, 61-b. And the restrictions which both jurisdictions impose upon that right imply a fundamental agreement that corporate management ought to be protected from the abuse of this legal weapon, even though this protection is gained at the expense of the stockholders' right to protect their property. See Lapchak v. Baker, 298 N.Y. 89, 94-95, 80 N.E.2d 751, 753 (1948).
 
 
 46
 Furthermore, there is nothing to suggest that New York courts will refuse to enforce, in appropriate cases, the so-called Massachusetts, Rule, which effectively bars a derivative action unless it is approved by an independent majority of stockholders.[17] Cf. Newman v. Baldwin, supra. This rule, in many respects similar to the law of Venezuela, seeks to avoid involving the corporation in unauthorized lawsuits:
 
 
 47
 'The fundamental basis of the rule is the Massachusetts view that neither an individual member nor a court is usually best fitted to determine whether it is to the interest of a corporation publicly to enforce corporate claims even if those claims are founded on plainly unlawful conduct participated in by corporate officers or directors. * * * (The stockholder) is remitted to the directors or, if they are disqualified, to the members as a body as the appropriate tribunal to decide not only if a derivative claim has merit but if the corporate welfare is best promoted by suing upon it * * *' Pomerantz v. Clark, 101 F.Supp. 341, 344 (D.Mass.) (Wyzanski, J.).
 
 
 48
 We recognize that there are differences between the laws of Venezuela and those of Massachusetts,[18] but we believe the laws are fundamentally alike in conception; and that the policy they represent is not inconsistent with that of New York. It is clear that New York courts 'are not so provincial as to say that every solution of a problem is wrong'[19] merely because it may differ from its own; and we find there is no substantial reason to believe that Venezuelan law would be ignored on the ground that it violates a 'fundamental principle of justice.'[20]
 
 
 49
 This Court cannot substitute notions of 'public policy' for well established New York conflict of laws principles, and we are unwilling to conclude that this would be done by New York Courts. See Paulsen and Sovern, 'Public Policy' in the Conflict of Laws, 56 Colum.L.Rev. 969 (1956). In this connection we recall the wise admonition of the English judge who said, more than a century ago,
 
 
 50
 'I, for one, protest, * * * against arguing too strongly upon public policy;-- it is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail * * *' (Burrough, J.). Richardson v. Mellish, 2 Bing. 229, 252, 130 Eng.Rep. 294, 303 (1824).
 
 
 51
 Affirmed.
 
 
 
 [1]
 The action was commenced on April 18, 1957. Since then a number of orders on various matters have been entered. Three of these are reported: Dalva v. Bailey, 153 F.Supp. 548 (S.D.N.Y.1957); Dalva v. Bailey, 158 F.Supp. 204 (S.D.N.Y.1957); Hausman v. Bailey, 22 F.R.D. 304 (S.D.N.Y.1957)
 
 
 [2]
 The only individual defendant before the court was John W. Buckley
 
 
 [3]
 The case was ultimately assigned to Judge MacMahon for all purposes, Rule 2, General Rules, S.D.N.Y
 
 
 [4]
 See Rule 42(b), Fed.R.Civ.P
 
 
 [5]
 Evidence of Venezuelan law was proffered by the defendants. Plaintiffs conceded that under Venezuelan law stockholders have no right to enforce any claim in favor of their corporation against officers, directors, or third parties (Tr. p. 5). This right is concerned exclusively upon the stockholders' meeting, which may bring suit through the appointment of persons to represent it for that purpose. Moreover, there are restrictions on the right of minority stockholders to have their complaint considered by the stockholders' meeting. Although a stockholder is entitled, as of right, to have his complaint brought to the attention of the meeting, he has no right, as such, to have a statement of the facts supporting his complaint put before the meeting unless he holds one-tenth of the capital stock, or represents stockholders who do (Findings of Fact 17-32)
 
 
 [6]
 See pp. 1127-28, 1137 infra
 
 
 [7]
 See analysis of the Massachusetts Rule by Wyzanski, J., p. 1137 infra
 
 
 [8]
 Chaplin v. Selznick, 186 Misc. 66, 58 N.Y.S.2d 453 (Sup.Ct.1945); Koral v. Savory, Inc., 276 N.Y. 215, 11 N.E.2d 883 (1937); Ripley v. International Rys. of Central America, 8 A.D.2d 310, 188 N.Y.S.2d 62 (1st Dept. 1959), aff'd 8 N.Y.2d 430, 209 N.Y.S.2d 289, 171 N.E.2d 443 (1960)
 
 
 [9]
 Restatement, op. cit. supra, 194:
 'Comment:
 'a. Law governing shareholder's right: The existence and extent of the right of the shareholders to control the actions of the corporate officers or agents is determined by the law of the state of incorporation (see 183).'
 
 
 [10]
 A federal court must 'give respectful heed to the pronouncements even of inferior state tribunals of record,' Mayer v. Chase National Bank, 233 F.2d 468, 470 (2nd Cir.), cert. denied 352 U.S. 841, 77 S.Ct. 64, 1 L.Ed.2d 58 (1956) and must accept as authoritative the decisions of a trial court of statewide jurisdiction 'in the absence of more convincing evidence of what the state law is.' Fidelity Union Trust Co. v. Field, 311 U.S. 169, 178-179, 61 S.Ct. 176, 85 L.Ed. 109 (1940); Mayer v. Chase National Bank, supra; Robles v. Folsom, 239 F.2d 562, 564 (2nd Cir. 1956), cert. denied 353 U.S. 960, 77 S.Ct. 869, 1 L.Ed.2d 911 (1957); cf. Beggs v. Dougherty overseas, Inc., 287 F.2d 80, 83 (2nd Cir. 1961)
 
 
 [11]
 See Restatement, Conflict of Laws, 182, 183, 194 (1934); Perlman v. Feldmann, 219 F.2d 173, 175, 50 A.L.R.2d 1134 (2nd Cir.), cert. denied, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955) (Conn.); Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666, 668 (1951) (D.C.); Zahn v. Transamerica Corp., 162 F.2d 36, 40, 172 A.L.R. 495 (3rd Cir. 1947) (Del.); Maxwell v. Enterprise Wall Paper Mfg. Co., 131 F.2d 400, 402 (3rd Cir. 1942) (Pa.); Reese and Kaufman, supra, at p. 1125, n. 29; 13 Fletcher, Corporations, 5972 (1961); 2 Beale, Conflict of Laws, 192.8 (1935); but see Mansfield Hardwood Lumber Co. v. Johnson, 268 F.2d 317 (5th Cir.), cert. denied 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959) (La.). Insofar as this case suggests that New York might recognize an exception for 'paper' corporations, it is clear from the allegations of the complaint itself that Pantepec would not come within such an exception
 
 
 [12]
 Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 388 (2nd Cir. 1961); Royce Chemical Co. v. Sharples Corp., supra; Purofied Down Products Corp. v. Travelers Fire Ins. Co., 278 F.2d 439, 441-442 (2nd Cir. 1960): Wooten v. Marshall, 279 F.2d 558, 559 (2nd Cir. 1960); Zogg v. Penn Mutual Life Ins. Co., 276 F.2d 861, 864 (2nd Cir. 1960); Huber Baking Co. v. stroehmann Bros. Co., 252 F.2d 945, 951 (2nd Cir.), cert. denied 358 U.S. 829, 79 S.Ct. 50, 3 L.Ed.2d 69 (1958); Internatio-Rotterdam, Inc. v. River Brand Rice Mills, Inc., 259 F.2d 137, 139 (2nd Cir. 1958), cert. denied 358 U.S. 946, 79 S.Ct. 352, 3 L.Ed.2d 352 (1959); Global Commerce Corp., S.A. v. Clark-Babbitt Industries, Inc., 239 F.2d 716, 719 (2nd Cir. 1956)
 
 
 [13]
 Appellants cite Haag v. Barnes, 9 N.Y.2d 554, 216 N.Y.S.2d 65, 175 N.E.2d 441 (1961) but this case also involves contract issues
 
 
 [14]
 'Justification for the rule today must be sought in * * * pragmatic considerations. These, it is believed, are to be found in the demands of convenience, certainty, and ease of application. It is always desirable, and sometimes essential, that matters bearing on the relationships inter sese of the corporation and its directors, officers, and stockholders be governed by a single law. This law should also be easily ascertainable, since otherwise it would be difficult if not impossible, to foresee the legal consequences of a given course of conduct. Both of these requirements are satisfied by the application of the law of the state of incorporation.' Reese and Kaufman, supra, at pp. 1126-27
 
 
 [15]
 Benton v. Safe Deposit Bank of Pottsville, 255 N.Y. 260, 267, 174 N.E. 648, 650 (1931)
 
 
 [16]
 See footnote 5, supra
 
 
 [17]
 S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 93 N.E.2d 241 (1950); Carroll v. New York, N.H. & H.R.R., 141 F.Supp. 456 (D.Mass.1956); Pomerantz v. Clark, text infra
 
 
 [18]
 Appellants point out that in Venezuela a majority of stockholders can prevent a court action even if they are involved in the alleged wrongdoing, but that this would not be possible in Massachusetts. Regardless of the merits of this contention, appellants have made no claim and have offered no proof that a disinterested majority of stockholders of Pantepec does not exist; and in the absence thereof we shall presume that 'the majority of stockholders are * * * acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned * * *' Bartlett v. New York N.H. & H.R.R., 221 Mass. 530, 532, 109 N.E. 452, 453 (1915)
 
 
 [19]
 Loucks v. Standard Oil Co., supra, 224 N.Y. at p. 111, 120 N.E. at p. 201; Coster v. Coster, supra
 
 
 [20]
 The recent decision in Kilberg v. Northeast Airlines, supra, does not support appellants' position in any respect. There is no indication in that case, which involved a refusal to enforce a limitation of damages prescribed by the Massachusetts wrongful death statute, that the Court of Appeals has abandoned or even modified the Loucks rule. In refusing to recognize a defense based upon Massachusetts law, the Court of Appeals was concerned with a strong public policy against limitation of damages for personal injuries-- a policy embodied in the state constitution. Furthermore, that court appears to have preferred to rest its decision not on grounds of public policy, but on a conclusion that the damages issue was merely a matter of procedure which was controlled by the law of the forum